### GREEN v. SIMON ET AL.

[No. 2,096.    Filed April 7, 1897.]

ACTION.—*Nature Of, How Determined.*—The question whether an action in which a judgment was recovered was an action in tort or in contract, must be determined by the pleadings in the cause in which the judgment was rendered. *p. 363.*

SAME.—*Action on Guardian's Bond an Action in Contract.—Exemption.*—An action on a guardian's bond, under section 2691, Burns' R. S. 1894, is an action in contract, within section 715, Burns' R. S. 1894, allowing a householder's exemption on execution or other final process for any debt growing out of, or founded upon a contract. *pp. 363, 364.*

EXEMPTIONS.—*Statutes Liberally Construed.*—Statutes providing for exemptions are liberally construed. *p. 366.*

SAME.—*Residence of Execution Debtor.—Schedule Filed by Wife in Absence of Husband.—Statute Construed.*—Where an execution debtor, to avoid criminal process, leaves the house where he has resided with his family, and his whereabouts are unknown, such debtor does not thereby lose his residence so as to deprive his wife from filing schedule and reserving for him a householder's exemption, as provided in section 715, Burns' R. S. 1894. *pp. 364-367.*

RESIDENCE.—*Not Lost Till Another is Acquired.*—A man can have but one place of residence ; and to lose his residence in one place he must acquire a residence in another. *p. 367.*

From the Noble Circuit Court. *Affirmed in part, reversed in part.*

*H. C. Peterson* and *L. W. Welker*, for appellant.

*L. H. Wrigley* and *H. G. Zimmerman*, for appellees.

BLACK, J.—This was an action of replevin, brought by the appellant against the appellees, Christopher C. Simon, William H. Kreager and John D. Kreager, who answered by general denial.

The cause was tried by the court and a special finding was rendered, with conclusions of law in favor of the appellees.

A motion for a new trial made by the appellant having been overruled, judgment was rendered in accordance with the conclusions of law.

The appellant's action was based upon her claim that the property in dispute was owned by her husband, Benjamin B. Green; that it had been levied on by the appellee Simon, as sheriff, under an execution issued on a judgment which had been rendered against said Benjamin and his sureties, upon his bonds as guardian of certain minors, at the suit of the appellee, William H. Kreager, as successor of said Benjamin as such guardian; and that after the levy and before sale thereunder, the appellant had demanded exemption, after having executed and delivered to said sheriff a schedule verified by her of the property of said Benjamin, in his absence from home, he being still absent, and being a resident householder, said scheduled property having been duly appraised.

It appeared from the evidence, and was shown in the finding, that said judgment was rendered in an action on the guardian's bonds, against him and his sureties, for an amount due the successor in said guardianship, as such, from said Benjamin and his sureties "on the several bonds sued upon," such recovery being for moneys of said wards which had come to the hands of said Benjamin as their guardian,

which he had concealed and converted to his own use, and had failed and refused to pay over to his said successor.

Included among the articles described in the complaint and in said schedule, which were levied on under the execution, were a certain buggy and a certain set of single harness, which the court found and adjudged to be the property of the other appellee, John D. Kreager. The evidence appears to have authorized the trial court to conclude that at the time of the issuing of the execution said Benjamin had not title to these articles, but that the ownership thereof was in said John D. Kreager, and we are not disposed to disturb the judgment so far as it is in favor of said John D. Kreager against the appellant in relation to said buggy and harness.

So far as the finding and judgment are in favor of the other appellees, the court seems to have proceeded upon two theories, one being that the judgment upon which the execution in question issued was in tort, and, therefore, no exemption was allowable to the execution defendant or to his wife acting in his behalf.

The basis of this theory seems to have been that because the recovery upon the bonds was for money concealed by the guardian and converted to his own use, for which defalcation the statute provides, that the damages recoverable in a suit on the guardian's bond shall include ten per centum of the amount otherwise assessed, therefore, the guardian was deprived of the right to claim any property as exempt from the execution issued on the judgment.

We are unable to agree with such a view of the matter.

The statute, section 715, Burns' R. S. 1894 (703, Horner's R. S. 1896), provides: "An amount of prop-

erty not exceeding in value $600.00, owned by any resident householder, shall not be liable to sale on execution or any other final process from a court, for any debt growing out of or founded upon a contract, express or implied, after the taking effect of this act."

The nature of the cause of action, the question whether it was in tort or in contract, must be determined by the pleadings and issues in the cause in which the judgment was rendered. *Gentry* v. *Purcell*, 84 Ind. 83; *Smith* v. *Wood*, 83 Ind. 522; *Ries* v. *McClatchey*, 128 Ind. 125; *Furry* v. *O'Connor*, 1 Ind. App. 573; *DeHart* v. *Haun*, 126 Ind. 378; *Maloney* v. *Newton*, 85 Ind. 565.

The action in which the judgment was rendered was upon express contracts set out with the complaint as exhibits, the recovery being within the amount of the bonds.

The statutes, section 2691, Burns' R. S. 1894 (2527, Horner's R. S. 1896), provides: "Any bond given by any guardian may be put in suit by any person entitled to the estate, and such suit shall be governed by the law regulating suits on the bonds of executors and administrators."

The law regulating suits on bonds of executors and administrators provides, as to the measure of damages in such suits, that it shall be the value of the property converted, etc., the injury to the estate, or any person interested therein, interest on the money retained, such exemplary damages as the court or jury trying the cause may be willing to give, and ten per centum on the whole amount assessed; and that no stay of execution or benefit of valuation or appraisement laws shall be allowed on a judgment on such bond as to the property of the principal. Sections 2614, 2615, Burns' R. S. 1894 (2459, 2460, Horner's R. S. 1896).

Thus the legislature has provided for suit on the bond and has prescribed special characteristics of the judgment and execution thereon, some of which do not pertain to an ordinary action, whether for tort or on contract, but it has not provided that there shall be no exemption in such case, while it has elsewhere provided for the exemption from liability to sale on execution for any debt growing out of or founded upon a contract, express or implied.

In *Wireman* v. *Mueller* (Pa. Sup.), 7 Atl. 592, it was held by the Supreme Court of Pennsylvania, that the judgment defendant in an action of assumpsit, though the foundation of the action was embezzlement, was, under the statute of that state, entitled to exemption, the action being in contract, and not *ex delicto*.

In this connection we may refer to an exception saved by the appellant to the admission of the testimony of an attorney who had been engaged as such in the action on the bonds, the purpose of the evidence being to support the theory that it was an action in tort. Such evidence was improper. It was said in *Smith* v. *Wood, supra,* "Where the complaint, upon which a judgment has been rendered, is unequivocal in respect to the character of the cause of action, there cannot be an inquiry into the evidence adduced upon the trial for the purpose of admitting or excluding a claim for exemption." See, also, *Gentry* v. *Purcell, supra; Pickrell* v. *Jerauld,* 1 Ind. App. 10.

But the question to which the argument has been largely directed relates to the court's finding that at the time of the issuing of the execution and thereafter the appellant's husband was not a resident householder.

The evidence shows that for many years he had resided continuously in the county wherein the execution was issued, keeping house there with his wife and

five children; that on the 18th of July, 1895, the day before the issuing of the execution, he left his home and family, without having made any statement to them or any one else of his intention to leave, or of his destination; that he had not returned to his home; that his wife and family continued to live and keep house at the same home where he had left them; that his wife had not heard from him, except once, when she received from him a letter, dated July 30, 1895, and mailed at Los Angeles, California,. in which he referred to certain notes and accounts inclosed in the letter, and gave explanations and directions concerning their collection. A letter afterward mailed to him at Los Angeles, California, had not been received by him, but had returned to the writer. His wife, at the time of the trial, did not know where he was, and had no knowledge as to where he had been since his departure, except that derived from the fact that said letter had come from him in California. It did not appear that any prosecution had been instituted against him, but he had embezzled the money in his possession as guardian, and the judgment had been rendered therefor upon his bonds as guardian. He had secretly absconded and had departed from the State, his whereabouts being unknown.

Upon such a state of facts the court found that he was not a resident householder when his wife claimed exemption in his behalf.

The statute under which she preferred her claim, section 727, Burns' R. S. 1894 (715, Horner's R. S. 1896), provides: "In any case when the execution defendant is absent from this State, or shall absent himself from home, and an attachment or execution shall be directed against his property, his wife may make out and verify the schedule of his property, and claim and receive for him the exemption provided in this act,

and claim and exercise all the rights which would belong to her husband were he present."

Under another statutory provision, above quoted, "any resident householder" could make the claim for himself were he present.

The statutes of the several states upon the matter of the exemption of the property of debtors differ greatly. The decisions in other jurisdictions can be of little aid, unless they relate to statutory provisions like our own.

Our statute is very broad and general in its terms.

The decisions of the courts here and elsewhere indicate that it is the understanding of the courts that such statutes must be applied and carried into effect in the liberal spirit which gives rise to such laws. They are intended, not for the benefit of the debtor himself alone, else their provisions would be extended to persons who are not householders; but the purpose of such enactments is to secure provision for the wants of indigent families. The State at large and the local governments thereof are greatly interested in the preservation of means for the maintenance and education of the poor, who but for such beneficent legislation would often be reduced to such conditions that not only would private suffering be increased, but also the public welfare would be impaired.

In support of the statement that such statutes are to be liberally construed very many cases might be cited in this and other states. We take space for but a few. See *Kelley* v. *McFadden*, 80 Ind. 536; *Astley* v. *Capron*, 89 Ind. 167; *State, ex rel.*, v. *Read*, 94 Ind. 103; *Wilson* v. *Joseph*, 107 Ind. 490; *Chatten* v. *Snider*, 126 Ind. 387; *Pickrell* v. *Jerauld, supra; Coppage* v. *Gregg*, 1 Ind. App. 112; *Eisenhauer* v. *Dill*, 6 Ind. App. 188.

In *Norman* v. *Bellman*, 16 Ind. 156, where an execu-

tion debtor had left the house where he resided with his family to avoid criminal process, and though frequently seen in the county, his usual whereabouts were unknown, it was held that these facts did not deprive him of the right to exemption.

We may take into consideration, in this connection, the presumption that the residence of a person shown to have been in a particular place continues in that place until the contrary is shown.

The general rule is, that a man can have but one place of residence, and that, to lose his residence in one place, he must acquire residence in another place. Personal presence alone at another place does not determine the matter. He must remove without the intention of returning to his home as such. He must remove to another place with the intent to make it his home. See *Culbertson* v. *Board, etc.,* 52 Ind. 361, and cases cited; *Astley* v. *Capron, supra; Moore* v. *Dunning,* 29 Ill. 130.

It would seem that at the time when the appellant made the application for exemption, her husband could have made a like application "were he present;" and that if he had returned to his household and resumed his duty toward it, he would have been entitled to exercise all the privileges which are dependent upon having a residence in this State.

Upon all these considerations, we are of the opinion that the evidence showed the appellant's husband to be a resident householder, within the meaning of the statute.

The judgment, so far as it relates to said buggy and harness and in favor of the appellee John D. Kreager against the appellant, is affirmed; and the judgment in relation to the other property in question in favor of the other appellees against the appellant is reversed, and the cause as against them is remanded for a new trial.