CLARENCE W. BARRON *vs.* CITY OF BOSTON.

Suffolk.    November 10, 1904. — January 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Tax.    Domicil.    Words,* "Manufacturing", "Manufactory."

One owning a house in a city and another in a town by the sea, can change his residence from the city to the town by forming an intention while abiding at his house by the sea of making it his permanent home for an indefinite period, if in pursuance of that purpose he continues to use it as his home, and this change of residence is none the less effected because the intention of the house owner is formed in the autumn and in the following winter he occupies his house in the city and in the spring goes abroad and does not return to his house at the seashore until June, his family having moved there after the first of May.

"Goods, wares, merchandise and other stock in trade . . . employed in the business of manufacturing or of the mechanic arts" which, under the first exception of R. L. c. 12, § 23, are taxable to the owners thereof in the cities or towns in which they "hire or occupy manufactories, stores, shops or wharves," do not include a printing press and other personal property used in publishing a bulletin of information to bankers every five minutes during business hours, containing information which ceases to be of value as soon as it becomes matter of common knowledge, such a business not being manufacturing nor the place where it is carried on a manufactory within the meaning of the statute, even if the property used in the publishing properly can be called goods, wares or merchandise.

CONTRACT for the amount of a tax for the year 1901, assessed upon the plaintiff as a resident of Boston and paid under protest. Writ dated September 17, 1902.

In the Superior Court the case was tried before *Gaskill,* J., without a jury. The judge made the findings of fact and the rulings stated in the opinion of the court, and found for the defendant. At the request of the parties, he reported the case for determination by this court. If the finding could be sustained, judgment was to be entered for the defendant; otherwise, judgment was to be entered for the plaintiff for the amount of the tax and costs.

*W. R. Sears,* (A. Lincoln with him,) for the plaintiff.

*A. L. Spring,* for the defendant.

KNOWLTON, C. J. This is an action to recover back a tax assessed upon the personal property and poll of the plaintiff on May 1, 1901. The first question is whether he was a resident of Boston at that time.

He owned a house in Boston which he occupied a part of the time. He also owned a large estate in Cohasset, consisting of a dwelling house containing twenty rooms, and a farm house, stables and a cow house. This he occupied a considerable part of the time in each year. Early in the year 1900 he was a resident of Boston, but he stayed with his family at the house in Cohasset from May to December in that year. The judge who heard the case found as follows: " That in the fall of 1900 Mr. Barron, having formed the intention of then and there becoming a resident of Cohasset and while living in his house at Cohasset and before his return to Boston, gave notice to the assessors of the city of Boston that he was a resident of Cohasset; that Mr. Barron some time after this notice was given — in December — moved to his Boston house and was not in Cohasset again until June, but his intention of remaining a resident of Cohasset continued uninterrupted; that he left for abroad in April and before leaving notified his family to be in Cohasset by the first of May, but that as a fact they were not there until shortly after the first of May. I further found as a fact that Mr. Barron did not notify the assessors of the town of Cohasset of his having become a resident there until the summer, in June, 1901, and that Mr. Barron had not carried out his intention of becoming a

resident of Cohasset by any sufficient overt act; and on these facts I ruled and found the plaintiff was a resident of the city of Boston on May first, 1901, and not of Cohasset."

On this finding of facts the ruling should have been that he was a resident of Cohasset. In *Viles* v. *Waltham*, 157 Mass. 542, the law as to domicil is stated as follows : " To acquire a domicil there must be residence in a place and an intention to make that place one's home." The only act, apart from the intention of the actor, which is absolutely necessary to the acquisition of a domicil in a city or town, is that at some time the person must go to the place and take up his abode there. If he is abiding there while his domicil is elsewhere, and if while so abiding he forms an intention immediately to make it his home permanently or for an indefinite period, and continues to abide there in pursuance of that purpose, he thereby acquires a new domicil. There is no requirement of law that he shall give notice to assessors or to anybody else. The act of going from one place to another, or some other act indicating a change of residence, is often referred to as a foundation for the introduction in evidence of the person's declarations as a part of the *res gestæ*. Declarations accompanying such acts are often important evidence of intention, bearing upon the question whether there was a *bona fide* change of residence. See *Viles* v. *Waltham, ubi supra.* In *McConnell* v. *Kelley*, 138 Mass. 372, Chief Justice Morton states the rule as follows: " In determining whether there has been such a change from one place to another, the test is to inquire whether he has in fact removed his home to the latter place with the intention of making it his residence permanently, or for an indefinite time. If he has, he loses his old domicil, and acquires a new one with all its rights and incidents." In *Thayer* v. *Boston*, 124 Mass. 132, 145, Mr. Justice Colt quoted from *Lyman* v. *Fiske*, 17 Pick. 231, 234, a part of the definition of domicil as follows: " It is manifest, therefore, that it embraces the fact of residence at a place, with the intent to regard it and make it his home. The act and intent must concur, and the intent may be inferred from declarations and conduct." In *Wilbraham* v. *Ludlow*, 99 Mass. 587, this is the first head note : " A person legally capable of choosing or changing his domicil, who is residing in a city or town in this Commonwealth with the purpose of there

remaining for an indefinite time, and without retaining and keeping up any intention to return to his former home in another city or town in this Commonwealth, has his domicil in the place of his actual residence." Under the law laid down in this and other cases the plaintiff, upon the findings of the judge, as applied to the other admitted facts, acquired a domicil in Cohasset, and a tax upon his poll and his personal estate could not properly be assessed in Boston.

The judge further found that he " had a printing press and other personal property incidental to the publishing of the Boston News Bureau in his Boston office on Exchange Place on May 1, 1901; and ruled that said property was subject to assessment in the city of Boston, even though Mr. Barron was a resident of the town of Cohasset on May 1, 1901; and that in that event the plaintiff's only remedy was by petition for abatement, and that this action could not be maintained on that ground also."

As we already have seen, this property could not be assessed under the first general provision of the R. L. c. 12, § 23, because the plaintiff was not an inhabitant of Boston. If it was taxable in that city at all, it was under the first clause of the exceptions in this section. To be taxable under this clause, property must be " goods, wares, merchandise," or " other stock in trade," or " stock employed in the business of manufacturing or of the mechanic arts," and the owner must hire or occupy a manufactory, store, shop or wharf in Boston. If the property used in publishing the Boston News Bureau was goods, wares or merchandise within the meaning of the statute, it does not appear that the plaintiff hired or occupied a manufactory, store, shop or wharf. The business of publishing the Boston News Bureau, according to the undisputed testimony, was the publication of a bulletin of information to bankers every five minutes during business hours. There is nothing to show that the place of business was a store or shop within the meaning of the statute. The business was not the production of goods, wares or merchandise to be kept for sale or use. It was rather the communication of information which quickly became a matter of common knowledge, and then ceased to be of value. The printing of words upon the paper used was simply the means adopted for the transmission of this intelligence from time to time. To call

such a business manufacturing, or to call the office and rooms in which it was conducted a manufactory, would be giving the words a peculiar and unusual meaning. The finding, therefore, does not bring the case within the statute. *Loud* v. *Charlestown*, 103 Mass. 278. *Charlestown* v. *County Commissioners*, 109 Mass. 270, 272. *Hittinger* v. *Westford*, 135 Mass. 258, 262. *Farwell* v. *Hathaway*, 151 Mass. 242. *Ingram* v. *Cowles*, 150 Mass. 155, 157. *Hittinger* v. *Boston*, 139 Mass. 17, 18. *Wellington* v. *Belmont*, 164 Mass. 142, 143.

*Judgment for the plaintiff.*