## SCHMOLL, TREASURER, *v.* SCHENCK.

[No. 5,941.   Filed November 26, 1907.]

1. PLEADING.—*Complaint.*—*Injunction.*—*Taxation.*—*Initial Attack on Appeal.*—A complaint for injunction showing that defendant city treasurer is threatening to assess taxes against plaintiff upon property properly listed and paid upon at her home city, and that she is not an inhabitant of the defendant's city, is sufficient, when attacked for the first time on appeal.   p. 583.

2. TAXATION.—*Situs.*—"*Inhabitant.*"—*Words and Phrases.*—*Statutes.*—Under §8421 Burns 1901, Acts 1897, p. 250, providing that "all personal property shall be assessed to the owner in the township, town or city of which he is an inhabitant," the word "inhabitant" imports the concurrence of the owner's habitancy or domicile with an intention of making such place his home.   p. 587.

3. WORDS AND PHRASES.—"*Resident.*"—The word "resident," as used in clause four, §240 Burns 1901, §240 R. S. 1881, providing that the word " 'inhabitant' may be construed to mean a resident in any place," means the true, fixed place from which the person has no present intention of moving.   p. 588.

4. TAXATION.—*Situs.*—"*Inhabitants.*"—*Who Are.*—Where a woman lived with her husband, until his death, at Vevay, and then took up a temporary abode at Peru, still owning several houses at Vevay and several farms near there, and always considered that as her home, and listed her credits there, paying taxes thereon, she is not an "inhabitant" of Peru, within the taxing statute (§8421 Burns 1901, Acts 1897, p. 250), and such property is not taxable to her at Peru.   p. 590.

5. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting oral evidence.   p. 591.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Suit by Flora H. Schenck against Andrew Schmoll, as city treasurer of the city of Peru.   From a decree for plaintiff, defendant appeals.   *Affirmed.*

*Cox & Andrews* and *H. M. Haag,* for appellant.
*Antrim & McClintic,* for appellee.

MYERS, J.—On March 9, 1904, appellee commenced this suit in the court below to enjoin the treasurer of the city of Peru, Indiana, from assessing against her and collecting certain taxes.   A complaint in one paragraph, answered

by a general denial, formed the issue. Trial by the court. Special findings made and conclusions of law stated thereon in favor of appellee, and over appellant's motion for a new trial judgment was rendered perpetually restraining and enjoining appellant from listing or assessing for taxation, against appellee in favor of the city of Peru, any moneys, moneys loaned or credits for the years 1893 to 1903, inclusive, or in any manner attempting to collect taxes thereon, and in favor of appellee for costs.

For the reversal of this decree appellant contends that appellee's complaint does not state facts sufficient to constitute a cause of action; that the trial court erred in each of its four conclusions of law, and in overruling appellant's motion for a new trial. Among the facts shown by the complaint, it appears that appellee was the owner of a certain tract of real estate in the city of Peru. For years prior to 1892 she was, and continuously since that date has been, a *bona fide* resident of the city of Vevay, Switzerland county, Indiana. As a resident of Vevay she was there regularly assessed for taxes on personal property, for all and each of the years from 1893 to and including the year 1903, consisting of moneys, notes, mortgages, etc., which were assessed and valued at various amounts during said years. Appellant is treasurer of the city of Peru, Miami county, Indiana, and as such treasurer is claiming that appellee was the owner of personal property consisting of moneys, moneys loaned and credits omitted from assessment for taxation for said years, and on which she was liable to be assessed and taxed in said city of Peru for said years, specifically stating the amount for each year, aggregating $287,345. She was not during said period a resident of said city of Peru. She did not give a list to the assessor of Miami county, nor was she assessed for taxation in any township or city in said Miami county for any of said years 1893 to 1903, inclusive, on any moneys, money loaned, notes or mortgages. ''Such threatened listing and assessing of

said taxes against her are wrongful and unlawful, and that she is in nowise liable for the payment thereof.''

The gist of this suit is that appellee was a *bona fide* resident of Vevay, Indiana, during all of the years mentioned in the complaint, and that the property sought to be assessed and taxed in Peru was not properly subject to taxation by said last-named municipality. Appellant for the first time, by an assignment of error in this court, questions the complaint for want of facts. The rule is that a complaint, after judgment, will be held sufficient if it exhibits facts enough to bar another action for the same cause. *Scott* v. *Collier* (1906), 166 Ind. 644; *Over* v. *Dehne* (1906), 38 Ind. App. 427; *Smith* v. *Smith* (1905), 35 Ind. App. 610. Under this rule the complaint is sufficient.

The special findings, in substance, show the date and place of appellee's birth and place of residence before marriage, her marriage on May 29, 1872, to Ulysses P. Schenck, Jr., a resident of Vevay, Switzerland county, Indiana, and that from that time she continued there to reside with him as his wife until his death and burial at Vevay in 1892. During the winter of 1889-90 appellee was an invalid and went to Peru, Miami county, Indiana, to receive treatment from certain physicians, residents of that city. For about two years from May, 1890, appellee, her husband, and child, and solely for the benefit of the health of appellee and her husband, lived in Colorado and California, during which time their home in Vevay remained closed. Immediately after the death of her husband appellee and her daughter went to Peru, and remained with relatives and friends until July, and then went to Vevay, where they remained until October, 1892, going from there to Canton, Ohio, for one month, then to Peru, to assist in the care of appellee's mother, who at that time was a widow—old, blind, and in ill-health—requiring constant attention and physical assistance, and which care and attention devolved largely upon appellee.

The mother died in July, 1903. In the spring of 1894, in anticipation of her daughter's marriage, a furnished residence in the city of Peru was leased for a term of eighteen months. The marriage occurred in June, 1894. Thereafter, when in Peru, appellee occupied said dwelling with her daughter and son-in-law. In September, 1895, her son-in-law went to New York for a course in the Bellevue Medical College, his wife and appellee following in December, all returning to Peru the last of June, 1896. In July appellee went to Petoskey, Michigan, where she remained a month, then returned to Peru, and immediately, with her daughter, went to Vevay, remaining until the latter part of October, when they returned to Peru. Appellee's son-in-law, a physician, after considering various cities, decided to locate permanently in Peru, and on June 26, 1897, appellee purchased a lot in Peru, took the title in her own name, erected thereon a dwelling-house, which was completed in July, 1898, and is the only real estate owned by appellee in Miami county. The dwelling was planned and constructed with reference to the wishes and conveniences of the son-in-law and his wife. Two rooms were for use as a physician's office, and one room for the special use of appellee's mother, and occupied by her when appellee was in Peru. When appellee was away the mother was taken to the home of her son. No special room was reserved for appellee. Appellee never remarried, and after the marriage of her daughter had no one depending upon her for support. In 1899 a son was born to appellee's daughter, and for several months after the birth of the child the mother was feeble in health and unable to care for it, and the child was cared for by appellee. Appellee since the death of her husband has not kept house, and prior to July, 1898, while in Peru she occupied furnished rooms and took her meals at hotels, restaurants and in boarding houses. Subsequently to her daughter's marriage, when convenient, they roomed at the same house and took their meals together. At other times they roomed

and boarded at separate houses. Immediately prior to the death of appellee's husband he was negotiating the sale of the home they occupied in Vevay. The sale was not consummated by him. Soon after her husband's death appellee stored her household goods in a portion of the house, and rented the remainder until 1893, when she sold said residence and her household goods, except certain articles which had come to her through the relatives of her husband, and which, owing to the memories associated with them, she retained for her daughter, and which she shipped and stored in Peru until the completion of her house in 1898. Appellee since the death of her husband has returned to Vevay on an average of about once a year, remaining on such occasions from two weeks to two months. Her stay on different occasions was shortened by calls from her relatives on account of sickness in their families, or on account of the condition of her own health. She has spent about nine-tenths of her time in Peru, the remainder in Vevay and other places. When appellee went to Peru after the death of her husband she had no definite time fixed during which she would remain. Appellee was a member of the Baptist church. She took a letter from that church at Vevay and deposited it in the Baptist church at Peru. When she went to Colorado and California in 1890 she took with her a church letter. On December 5, 1895, appellee intended to visit Europe for an indefinite time. To enable her brother to attend to her business, pending her absence, she executed to him a power of attorney, in which the scrivener who drew said instrument, without her knowledge, described her residence as in Miami county, Indiana, and she executed the same without observing that her place of residence was so stated, and did not know of such mistake until after the instrument was recorded. She at no time knowingly executed an instrument nor accepted a conveyance to herself in which her residence was described as Miami county, Indiana. After the sale of her homestead in Vevay, the pur-

chaser placed at her disposal a certain room therein, which she occupied at times, at other times, from choice, occupied another room, and at other times roomed with relatives of her deceased husband. She took her meals at the hotel, and at times boarded with her friends. Of all the times appellee was in Vevay, after the death of her husband, on but two occasions did she go on matters of business. Since the death of her husband she has continuously owned, in the city of Vevay, six residence properties, some unimproved lots, two business rooms, two livery stables, one paint shop, and an interest in a furniture factory. In Switzerland county she owns four farms, one of thirty acres, two of one hundred acres each, and one of over two hundred acres. She owns notes, secured by mortgages on real estate in Miami county, of the value of $10,000. Since the sale of her homestead in Vevay, appellee has owned but a small amount of tangible personal property, consisting principally of a horse and buggy, which, with her daughter's household goods, she listed for taxation in the city of Vevay until the year 1898, inclusive, in good faith, claiming and believing that to be her residence and the proper place to list said property, although said property was in Miami county, Indiana. For the years 1899 to 1903, inclusive, acting on the advice that tangible personal property should be listed for taxation and assessed in the township, town or city where the same is situate, irrespective of the owner's place of residence, the property just named was listed for taxation in said city of Peru, she at the time of each listing claiming Vevay as her residence. In each and every year from 1893 to 1903, appellee, claiming Vevay as her home, returned to the township assessor of the township in Switzerland county, in which the city of Vevay is located, a full, true and complete list of all moneys, moneys loaned, and credits owned by her on April•1 of each of said years, respectively, which were duly listed for taxation in said county and city, averaging for the eleven years $21,662, and the taxes were duly

assessed on the property so returned and listed, both in said county and city, and paid by appellee. Appellant is threatening to place certain property on the tax duplicates for the years 1893 to 1903, inclusive, consisting of moneys, moneys loaned and credits, ranging in amounts from $16,240 in 1893, to $22,896 in 1903. During said years the average rate of taxation in the city of Peru was $1.42, and in Vevay, sixty and one-sixth cents on the $100. She had. an agent in Vevay who attended to the listing of her property, and she did not know the rate of taxation in either Peru or Vevay for either of said years. During her married life she formed sincere and lasting friendships in Vevay, and a warm attachment for the city and its residents, which she still retains, and never at any time intended to abandon her home in Vevay and to fix her home in any other place, and intends to maintain that city as her home and be buried there.

In this case there is no question of fraud or bad faith, nor claim that the property claimed as exempt from taxation in the city of Peru was under the control of a 2. trustee or agent, nor within any of the exceptions mentioned in §8421 Burns 1901, Acts 1897, p. 250. By this section "all personal property shall be assessed to the owner in the township, town or city of which he is an inhabitant on the first day of April of the year for which the assessment is made." The question now under consideration depends largely upon the construction given to the word "inhabitant" as used in the statute. The statutory rules of construction (§240 Burns 1901, cl. 4, §240 R. S. 1881), provide that "the word 'inhabitant' may be construed to mean a resident in any place." It is almost impossible from the decided cases to give an exact definition of the word "inhabitant" as applicable to all cases. It has been construed to mean an occupant of land; a resident; a permanent resident; one having a domicil; a citizen; a qualified voter; a settler. Its construction is made to de-

pend upon the connection in which the word is used. "Inhabitant implies a more fixed and permanent abode than 'resident;' frequently imports many privileges and duties to which a mere resident could not lay claim or be subject. One domiciled; one who has his domicil or fixed residence in a place, in opposition to a mere 'sojourner.'" Anderson's Law Dict. "Domicil, the place where a person lives, or has his home; that is, where one has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. The habitation fixed in any place without any present intention of removing therefrom." Anderson's Law Dict. "*A resident of a place,* is one whose place of abode is there, and who has no present intention of moving therefrom." (Our italics.)    24 Am. and Eng. Ency. Law (2d ed.), 694. Our lawmakers selected the word "inhabitant," a word, as we have seen, embracing locality of domicil or fixed, permanent home, and which excludes the idea of a temporary residence, as particularizing the character of the residence intended where property of the class described in the complaint shall be taxed.

Considering the force given the word "resident" when used in the phrase "a resident of a place," and our right by statute to construe "inhabitant" to mean "a resident in any place," we have the word "inhabitant," and phrase "resident in any place," as meaning a true, fixed place, from which one has no present intention of moving. Pedigo v. Grimes (1888), 113 Ind. 148; Astley v. Capron (1883), 89 Ind. 167; McCormick v. Board, etc. (1879), 68 Ind. 214.    Not, if absent, that he will return to a particular building, but, when applied to our taxing statutes, that he will return to the township, town or city of which his domicil or place of residence is shown to be.    As said by this court in Green v. Simon (1897), 17 Ind. App. 360, 367: "The general rule is, that a man can have but one place of residence, and, that to lose his residence in one

place, he must acquire residence in another place. Personal presence alone at another place does not determine the matter. He must remove without the intention of returning to his home as such. He must remove to another place with the intent to make it his home." The New Jersey act for the assessment of personal property, approved April 11, 1866, is practically in the same language as the act we are now considering, when read with our permissive construction of the word "inhabitant." It was said in *State, ex rel.,* v. *Casper* (1873), 36 N. J. L. 367, in considering the New Jersey act: "The character of the residence here intended is fixed by the word inhabitant. The meaning of this word, as used in the act, does not differ materially, if at all, from its ordinary and popular signification. One who has an actual, but merely temporary, residence in a place, is not, in any proper sense, an inhabitant of that place. An inhabitant of a township or ward is one who has his domicil there, his fixed habitation and home, from which he has no present intention of removing." The well-considered case of *Borland* v. *City of Boston* (1882), 132 Mass. 89, 42 Am. Rep. 424, is very instructive on the question now being considered. One of the questions in that case was who were inhabitants within the meaning of the statutes of that state, making "liable to taxation in a particular municipality those who are inhabitants of that municipality on the first day of May of the year." On that question the court ruled: "We cannot construe the statute to mean anything less than 'being domiciled in.' A man need not be a resident anywhere. He must have a domicil. He cannot abandon, surrender or lose his domicil, until another is acquired. * * * Upon the whole, therefore, we can have no doubt that the word 'inhabitant' as used in our statutes when referring to liability to taxation, by an overwhelming preponderance of authority, means 'one domiciled.' While there must be inherent difficulties in the decisiveness of proofs of domicil, the test itself is a

certain one; and inasmuch as every person by universal accord must have a domicil, either of birth or acquired, and can have but one, in the present state of society it would seem that not only would less wrong be done, but less inconvenience would be experienced, by making domicil the test of liability to taxation, than by the attempt to pick some other necessarily more doubtful criterion." In the case at bar it is admitted that appellee in 1893 was an inhabitant of Vevay, Indiana. With this fact admitted, the rule is well settled, both in this country and in England, that such habitancy or domicil will continue until both residence in a new locality and intent to make it her home concur. *Green* v. *Simon, supra; McCollem* v. *White* (1864), 23 Ind. 43; *Brittenham* v. *Robinson* (1897), 18 Ind. App. 502; *Borland* v. *City of Boston, supra; People* v. *Estate of Moir* (1904), 207 Ill. 180, 69 N. E. 905, 99 Am. St. 205; *Price* v. *Price* (1893), 156 Pa. St. 617, 27 Atl. 291; *Plant* v. *Harrison* (1902), 74 N. Y. Supp. 411; *Viles* v. *City of Waltham* (1892), 157 Mass. 542, 32 N. E. 901, 34 Am. St. 311; *Mitchell* v. *United States* (1874), 21 Wall. 350, 22 L. Ed. 584; *Desmare* v. *United States* (1876), 93 U. S. 605, 23 L. Ed. 959; *Whicker* v. *Hume* (1858), 7 H. L. Cas. *124; *Udny* v. *Udny* (1869), L. R. 1 H. L. Sc. 441; Dicey, Conflict of Laws (ed. by Moore), 104. Intention in cases of this character may be determined by the general acts and conduct and expressions of intention, but such expressions alone will not control the ultimate fact in issue if they are inconsistent with the acts and general conduct of the person making them. Jacobs, Domicil, §455.

In the case at bar the special findings show the presence of appellee in Peru, Miami county, the greater part of the time between 1893 and 1903, inclusive, that she purchased a lot and built a residence thereon, and that she has money loaned in that county. But, when these facts are considered in connection with the denial of an intention to adopt Peru as her domicil or habitancy,

the magnitude of her interests in Vevay and Switzerland county, her acts and conduct in listing the property in controversy for taxation in Vevay, her long-admitted residence there, her explanation of the cause of her stay in Peru, covering practically the entire time for which she is proposed to be taxed by the latter city, the explanation and inferences to be drawn from the facts found relative to the purchase of the lot, and the building of the residence, coupled with the fact that, by the will of her late husband, she became the owner of all the property with which he died seized, and that she, during all of said time, was unmarried, together with all of the other facts found, clearly sustain the conclusions of law of the trial court to the effect that during all of said time she was an inhabitant of Vevay, and not an inhabitant of Peru, Indiana, and that the class of property mentioned in the complaint was, during all of the time mentioned, properly and rightfully listed and taxed in Vevay.

We have carefully considered the evidence relative to appellant's contention, that it is not sufficient to support the findings presented by his assignment of error on the action of the court in overruling his motion for a new trial. Without here taking the space and time necessary to set out the evidence tending to support the findings so challenged, we deem it sufficient to say that, on all material facts, there is evidence in the record justifying the inferences drawn by the trial court. Any other conclusion of fact could only be drawn by weighing the evidence, partly oral and partly documentary, and this we cannot do. *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 2 L. R. A. (N. S.) 788; *Parkison* v. *Thompson* (1905), 164 Ind. 609; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694; *Over* v. *Dehne* (1906), 38 Ind. App. 427; *Maitland* v. *Reed* (1906), 37 Ind. App. 469; *Smith* v. *Smith* (1905), 35 Ind. App. 610,

Judgment affirmed.