CROOP ET AL. *v.* WALTON ET AL.*

[No. 24,810.    Filed June 10, 1927.]

</div>

1. TAXATION.—*Collection of tax may be enjoined when property not subject to taxation.*—Where property that is not subject to taxation is placed on the tax duplicate, the assessment is void, and its collection can be restrained by injunction, regardless of the right to appeal therefrom or of a right to file a claim for refund.   p. 265.

2. TAXATION.—One seeking to have his personal property exempted from taxation on the ground of his nonresidence is not required to show that his property was assessed elsewhere.   p. 265.

3. TAXATION.—*Corporate stock is assessable at owner's domicile.*—Property of an intangible nature, such as stock in a corporation, and mortgages, has no situs of its own for the purpose of taxation, and is therefore assessable only at the place of its owner's domicile.   p. 268.

4. TAXATION.—*Word "inhabitant" defined.*—The word "inhabitant," as used in the general tax statute in reference to the place where personal property shall be assessed, means "one who has his domicile or fixed residence in a place."   p. 268.

5. DOMICILE.—*"Domicile" defined.*—One's "domicile" is that place where he has his true, fixed, permanent home or habitation, without any present intention of removing therefrom, and, to which, whenever he is absent, he has the intention of returning.   p. 269.

6. DOMICILE.—There is a very clear and definite distinction between "domicile" and "residence" which is stated.   p. 269.

7. DOMICILE.—*Person may have domicile in one place and residence in another.*—While a person can have but one domicile at a time, he may have concurrently a residence in one place or jurisdiction and a domicile in another.   p. 270.

8. DOMICILE.—*Removal of residence until health of family is restored does not change domicile.*—A complete removal of residence, with the intention to remain an indefinite time, even though there may be a floating intention to return to the former domicile at some future and indefinite period, constitutes a change of domicile, but an intention to return on the occurrence of some event which may be reasonably anticipated, as when the health of a member of the family has been restored, is not such an indeterminate or floating intention.   p. 270.

*Reported and Annotated 53 A. L. R. 1386

9. DOMICILE.—*By choice depends on intention.*—Domicile is of origin or birth, by choice or operation of law; intention is the true basis or foundation of domicile by choice. p. 271.

10. DOMICILE.—*What is necessary to effect a change.*—To effect a change of domicile, there must be an abandonment of the first domicile, with an intention not to return to it, and there must be a new domicile acquired by residence elsewhere, with an intention of residing there permanently, or, at least, indefinitely. p. 271.

11. DOMICILE.—*Presumption of continuance.*—An established domicile is presumed to continue in the absence of proof of another domicile having been acquired. p. 272.

12. TAXATION.—*Residence in Indiana which did not constitute property owner "inhabitant" within meaning of tax law.*—Where a manufacturer who had resided for many years in a city of Michigan, after the death of a daughter, which greatly affected his wife's health, her condition becoming worse whenever they returned to their home city, took up his residence at a point in Indiana, thirty-four miles distant, and continued to live there for several years, with the intention to return to their former home whenever his wife recovered her normal mental and physical condition, continued his business activities and ownership of property at that point, exercised political rights there, kept up his membership in church, lodges and clubs, and gave that as his residence in deeds, mortgages, leases and contracts, and in hotel registrations, insurance policies, etc., buried his daughter there, paid taxes there on stock in corporations of Indiana and other states, and notified the taxing authorities of Indiana that his domicile was in Michigan, he was not an "inhabitant" of Indiana within the section of the tax law providing where personal property shall be assessed for taxation (§14050 Burns 1926). p. 272.

From Kosciusko Circuit Court; *Lemuel W. Royse,* Judge.

Suit by Jerrold F. Walton and others against Charles A. Croop and others for injunction. From a judgment for plaintiff's, the defendants Charles A. Croop and others appeal. *Affirmed.*

*L. L. Burris, Thomas A. Davis* and *Warren Berkey,* for appellants.

*Frazer, Frazer & Headley* and *Verne G. Cawley,* for appellees.

MARTIN, J.—Appellee Walton brought this action to

enjoin appellants, who are county officials of Elkhart county and his coappellees, who are city officials of the city of Elkhart, from collecting certain taxes, alleged to have been unlawfully assessed against him on certain intangible property, consisting principally of corporate stock in a Michigan furniture manufacturing company. The issues were formed by answers in general denial.

The trial court, at appellee Walton's request, made a special finding of facts and stated its conclusions of law thereon, the first and second conclusions of law being as follows:

"FIRST.   That on the first day of March, 1918, 1919, 1920, 1921, 1922 and 1923, the plaintiff was not legally domiciled in or an inhabitant of Elkhart county, State of Indiana, but was on each of said dates legally domiciled in, and an inhabitant of the City of Sturgis, St. Joseph County, State of Michigan.   SECOND.   That the property, described in the complaint was not subject to taxation in Elkhart County, State of Indiana, on the 1st day of March, 1918, 1919, 1920, 1921, 1922 and 1923, but was subject to taxation in the City of Sturgis, St. Joseph County, State of Michigan, on said dates."

The third conclusion of law was that the plaintiff take nothing as against the defendants city of Elkhart, its controller and treasurer.   The conclusions of law were excepted to by the auditor, treasurer and assessor of Elkhart county who are the appellants.   The court rendered judgment enjoining the appellants from collecting or attempting to collect the disputed taxes, and providing that appellee Walton recover of appellants his costs, and that the Elkhart city officials, joined as defendants, recover of appellee their costs.   The conclusions of law and also the overruling of appellant's motion for a new trial, are assigned as error.

The first proposition presented by appellants is that appellee Walton's exclusive remedy was by appeal from the county assessor's decision that his property was

taxable, and not by an injunction suit which at-
1.   tacks collaterally the assessor's finding.   Section
14298 Burns 1926, Acts 1919, ch. 59, §256; §1, ch.
195, acts of 1911, provides that from the finding of the
county assessor whose duty it is "to investigate, decide,
assess and place on the tax duplicate of any county in
this state *any property subject to taxation* and omitted to
be returned, listed and assessed for taxation, the owner of
such property or other person against whom such omitted
property has been assessed, shall have the right to appeal."
The appellee Walton contended, and the court held,
that the property here involved was not "subject to
taxation."   If the omitted property is subject to taxa-
tion and the amount assessed is erroneous, the taxpayer
has "the right to appeal" under the statute quoted, and
he also has the right to file a claim for a refund under
§14376 Burns 1926, Acts 1919, ch. 59, §332, but where
the property is not subject to taxation the assessment
is void and its collection can be restrained by injunction,
regardless of the right to appeal or to file claim for re-
fund.   *Senour, Treasurer,* v. *Ruth* (1895), 140 Ind. 318,
39 N. E. 946; *Herron, Treasurer,* v. *Keeran* (1877), 59
Ind. 472, 26 Am. Rep. 87; *Wilt* v. *Bueter, Treas.* (1916),
186 Ind. 98, 111 N. E. 926, 115 N. E. 59; *Buckingham* v.
*Kerr, Treas.* (1918), 68 Ind. App. 290, 120 N. E. 422;
*Layman* v. *Telephone Co.* (1904), 123 Iowa 591, 599, 99
N.W. 205; *Nyce* v. *Schmoll* (1907), 40 Ind. App. 555, 82
N. E. 539.

In applying for an injunction, appellee Walton seeks
an equitable remedy, and appellants say that he has not
done equity and does not come with clean hands
2.   because he admitted that he paid no taxes to the
State of Michigan on certain bonds and on a
mortgage; and that such facts if found by the trial
court, would have required different conclusions of law.
The record does not bear out appellant's contention.

Appellee Walton, on cross examination, testified that he had made no personal property return for certain years in the State of Michigan, except on certain bank stock. The treasurer of St. Joseph county, Michigan, however, testified that the tax on the mortgage was paid at the time it was recorded and that henceforth, under the law of Michigan, such property was not subject to taxation, and Walton also testified on direct examination that taxes were paid on the bonds. Moreover, one seeking to establish his claim of exemption from taxation on the ground of non-residence is not required to show that his property was assessed elsewhere. *Shirk* v. *Board of Review* (1908), 137 Iowa 230, 114 N. W. 884; *Theobald* v. *Clapp* (1909), 43 Ind. App. 191, 199, 87 N. E. 100.

Appellant's principal contention is that the conclusions of law are erroneous for the reason that the findings of fact establish the status of Walton as an "inhabitant" of Indiana within the meaning of our tax law, §14050 Burns 1926, Acts 1919, ch. 59, §10, and do not establish his status as being legally domiciled in Michigan. A consideration of this question requires a brief resume of the thirty-one findings of fact, which follows:

Walton, from 1899 to 1916, maintained a residence or home for himself and his family in Sturgis, Michigan. In December, 1915, he purchased a residence in Elkhart, Indiana, for the purpose of residing there until his daughter, who was divorced, became settled elsewhere. In January, 1916, he sold his home in Sturgis. The daughter died in March, 1916, before he moved into the Elkhart house. The daughter's death caused the severe mental and physical illness of Mrs. Walton, who then spent a year and a half in different parts of the United States in hospitals, sanitariums and hotels under medical treatment, and thereafter suffered painful nervous agitations affecting her health whenever she returned to Sturgis. In September, 1917, Walton and his wife oc-

cupied the house in Elkhart, after which time it was their chief dwelling place, with the exception of a room which Walton occupied occasionally in his brother's house in Sturgis, where he kept clothing and other furnishings. He first occupied the Elkhart house on account of the mental and physical condition of his wife, and continued to occupy it until such time as she could safely return to Sturgis to live. He did not leave Sturgis with the intention of giving up his domicile there or come to Elkhart with the intention of acquiring a new domicile, and after that time he had no intention of changing his domicile. He came to remain only until his wife could recover her mental and physical condition, and did not, after coming to Elkhart, have any intention of remaining there permanently. Walton, for one year after September, 1917, went to Sturgis on an average of six days per week, during the next three years, four or five days per week, and after that, up to the time of this action, two days per week, looking after the affairs of a large furniture manufacturing corporation of which he was an officer and general manager and which he established in Sturgis in 1899. He also owned a mercantile building, consisting of seven stores, and bank stock in Sturgis and all he owned in Elkhart was his home and furniture, certain automobiles and bank stock. All taxes on his bonds in a Florida apartment building, bonds in an Indiana light company and on a mortgage on certain real estate in Michigan, for the period of time he was the owner of them, were paid to the taxing authorities in Michigan. From 1918 to 1923, inclusive, he listed and paid taxes in Indiana on all tangible property owned by him located in this state. Early in 1918, he employed an Elkhart lawyer (now judge of the Elkhart Superior Court) who, at his direction, informed the county assessor that Walton's legal residence and domicile was Sturgis, Michigan, and that he was not subject to taxation

in Indiana except for property physically within this state, and that each year thereafter, Walton himself informed the assessor that he owned certain stocks and bonds which he did not list for taxation in Indiana. In the articles of incorporation, in the corporation returns and annual reports made by Walton's company to the secretary of state of Michigan, Walton's address was given as Sturgis, Michigan. He was the owner of stock in the furniture manufacturing company, a Michigan corporation having all its property located in Sturgis. Taxes on all the property claimed by the county assessor to have been omitted by Walton for the years 1918-1923 inclusive, amounted to $14,465. The special findings also described a city lot located in Elkhart and belonging to Walton which appellants unless restrained, proposed to sell to provide funds out of which to collect the taxes in dispute.

We believe that the foregoing findings of facts clearly establish the status of appellee Walton on the dates in question as a person domiciled in the State of Michigan, and that the court correctly stated its conclusions of law.

Property of an intangible nature such as the property involved here has no *situs* of its own for the purpose of taxation and is therefore assessable only at the place of its owner's domicile. *Foresman* v. *Byrns* (1879), 68 Ind. 247; *City of Evansville* v. *Hall* (1859), 14 Ind. 27; 37 Cyc 955, note 84.

The word "inhabitant," as used in our statute regulating the imposition of taxes, means "one who has his domicile or fixed residence in a place." *Schmoll* v. *Schenck* (1907), 40 Ind. App. 581, 82 N. E. 805; Note, Ann. Cas. 1915C p. 784.

"If the taxpayer has two residences in different . . . states, . . . he is taxable at the place which was originally his domicile, provided the opening of the other home has not involved an abandonment of

the original domicile and the acquisition of a new one."
37 Cyc 948, citing *Harvard College* v. *Gore* (1827), 5
Pick. (22 Mass.) 370.

No precise or exact definition of the term "domicile"
which responds to all purposes seems to be possible.
It is the place with which a person has a settled

5. connection for legal purposes, either because his home is there or because it is assigned to him by the law, and is usually defined as that place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom and to which place he has, whenever he is absent, the intention of returning. 1 Bouvier's Law Dict. (Rawles 2d Rev.) 915; 19 C. J. 392; 9 R. C. L. 538; 3 Words and Phrases 2168; 2 Words and Phrases (2d ed.) 133. Many cases collected in the works just cited have held that at times the cognate terms "residence" and "domicile" are synonymous, but

6. many other cases there cited and quoted from have held that the two terms, when accurately used, are not convertible, but that there is a very clear and definite distinction between them. "Domicile," says Wharton (1 Conflict of Laws [3d ed.] §20, p. 77), "is a residence acquired as a final abode. To constitute it there must be (1) residence, actual or inchoate; (2) the nonexistence of any intention to make a domicile elsewhere." "The domicile of any person" says Dicey, (Conflict of Laws [2d ed.] p. 82) "is, in general, the place . . . which is in fact his permanent home, but is in some cases the place . . . which, whether it be in fact his home or not, is determined to be his home by a rule of law."

"Residence is preserved by the act, domicile by the intention. Domicile is not determined by residence alone" (*In re Greens Estate*, [1917], 99 Misc. Rep. 582, 598, 164 N. Y. Supp. 1063, 1073), but upon a considera-

tion of all the circumstances of the case. The fact that appellee lived in a house in Elkhart, Indiana, must be considered in connection with the facts that he went there to live for the benefit of his wife's health, formed no intention to abandon Sturgis, Michigan, as his domicile, continued all his business activities at Sturgis and the many other facts which were here presented.

While a person can have but one domicile at a time, (9 R. C. L. 539, note 13; 2 Supp. R. C. L. 826, note 13) he may have concurrently a residence in one place 7.  or jurisdiction and a domicile in another. *Raymond* v. *Leisham* (1914), 243 Pa. St. 64, 89 Atl. 791, Ann. Cas. 1915C 780, L. R. A. 1915A 400; *Talley* v. *Commonwealth* (1920), 127 Va. 516, 103 S. E. 612; *Fitzgerald* v. *Arel* (1884), 63 Iowa 104, 16 N. W. 712, 50 Am. Rep. 733; *Frost* v. *Brisbin* (1837), 19 Wend. (N. Y.) 11, 32 Am. Dec. 423, and note p. 427; *Grant* v. *Lawrence* (1910), 37 Utah 450, 108 Pac. 931, Ann. Cas. 1912C 280, and note.

Where there is a complete removal of residence, with an intention to remain an indefinite time, even though there may be a floating intention to return to the 8.  former domicile at some future and indefinite period, it has. been held that there has been a change of domicile. But an intention to return on the occurrence of some event which may reasonably be anticipated, as when the health of a relative has been restored, is not such an indeterminate or floating intention. 19 C. J. 408; *McDowell* v. *Friedman Bros. Shoe Co.* (1908), 135 Mo. App. 276, 115 S. W. 1028. The mere absence of Walton from his domicile in Sturgis and his temporary residence in Elkhart for the benefit of his wife's health, even though such absence and residence continued for a number of years, did not effect a change of domicile, since he did not have any intention to abandon that domicile and acquire another and did have an

intention of returning to his domicile at a later time for residence. It was shown that he intended to reside in Elkhart until his wife "recovered her mental and physical condition" and "until she could safely return to Sturgis." Similar temporary changes of residence for the health of a member of the family were the basis of the contests in the following cases, which held that no change of domicile was effected. Reed's Will, (*Pickering* v. *Winch*) (1906), 48 Ore. 500, 87 Pac. 763, 9 L. R. A. (N. S.) 1159, and note; *Dupuy* v. *Wurtz* (1873), 53 N. Y. 556; *Cruger* v. *Phelps* (1897), 21 Misc. 252, 47 N. Y. Supp. 61; *Still* v. *Woodville* (1860), 38 Miss. 646; *Johnstone* v. *Beattie* (1843), 10 Clark & Finnelys 42, 139, 7 Jus. 1023; *Isham* v. *Gibbons* (1849), 1 Bradf. (N. Y.) 69; *Winans* v. *Attorney General* (1904), 73 L. J. K. B. (N. S.) 613; *Gamble* v. *Dawson* (1912), 67 Wash. 72, 120 Pac. 1060, Ann. Cas. 1913D 501; *Smith* v. *Croom* (1857), 7 Fla. 81; *Milligan* v. *Fortson* (1906), 126 Ga. 15, 54 S. E. 915; *People* v. *Connell* (1888), 28 Ill. App. 285; *Ensor* v. *Graff* (1875), 43 Md. 291; *McDowell* v. *Friedman Bros. Shoe Co.*, *supra.*

Domicile is of three kinds—domicile of origin or birth, domicile by choice, and domicile by operation of law.

Domicile by choice—as was appellee's domicile at 9, 10. Sturgis—has for its true basis or foundation the intention of the person. Whether appellee changed his domicile depends very largely upon his intention. To effect a change of domicile, there must be an abandonment of the first domicile with an intention not to return to it, and there must be a new domicile acquired by residence elsewhere with an intention of residing there permanently or at least indefinitely. 9 R. C. L. 542 and cases cited, note 1; 19 C. J. 404-406 and cases cited, notes 89, 90, 91 and 92; *Pickering* v. *Winch, supra; Barron* v. *Boston* (1904), 187 Mass. 168, 72 N. E. 951; *People ex. rel.,* v. *Crowley* (1897), 21 App. Div. (N. Y.) 304, 47 N. Y.

Supp. 457; *Gilman* v. *Gilman* (1863), 52 Me. 165, 83 Am. Dec. 502; *Lowry* v. *Bradley* (1842), Speers, Eq. (S. C.) 1, 39 Am. Dec. 142; *Ex parte Blumer* (1865), 27 Texas 734; *City of Covington* v. *Wayne* (1900), 22 Ky. Law Rep. 826; *Hascall* v. *Hafford* (1901), 23 Pickle (Tenn.) 355, 64 S. W. 423, 89 Am. St. 952; *Will of Eaton* (1925), 186 Wis. 124, 202 N. W. 309; *In re Jones* (1921), 192 Iowa 78, 182 N. W. 227, 16 A. L. R. 1286; *Boyd* v. *Commonwealth* (1912), 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B 481; *Ennis* v. *Smith* (Kosciusko's will) (1852), 14 How. (55 U. S.) 400, 14 L. Ed. 472; note in 1 American Leading Cases, (5th ed.) 887.

Appellee's residence at Elkhart had some, but not all, of the elements of a domicile and his established domicile at Sturgis is presumed to continue, in the absence of proof of another domicile having been acquired. *Dupuy* v. *Wurtz, supra*; *Matter of Newcomb* (1908), 192 N. Y. 238, 84 N. E. 950; *Mitchell* v. *United States* (1874), 21 Wall. 350, 22 L. Ed. 584; *Holyoke* v. *Holyoke* (1913), 110 Me. 469, 87 Atl. 40; *United States Trust Co.* v. *Hart* (1912), 150 App. Div. 413, 135 N. Y. Supp. 81. The appellee traveled by automobile between his house in Elkhart and his factory, an hour's drive (thirty-four miles) distant, to Sturgis, where his principal business interests were. Savigny's definition declares domicile to be that place which an individual has voluntarily selected as a permanent residence, and as the center of his legal relations and his business. While this definition is not in accord with the present rule which "is to sink the business center in the home . . . it is the home and not the business site, that determines his personal relations," 1 Wharton, Conflict of Laws, (3d ed.) 81, it is interesting to note in this connection, where the person in interest elected to retain his domicile in the principal place of

his business. While the rule in England, in the case of a gentleman with a family seat in the country and a residence in the city, is to consider the former his prevailing domicile, a merchant whose business is in the metropolis is considered as having his domicile there and not at his country residence. *Somerville* v. *Lord Somerville* (1801), 5 Ves. 750, 788.

All of appellee's business mail was addressed to Sturgis, and his metropolitan charge accounts gave Sturgis as his address, as did his patent applications to the United States government. He maintained three automobiles at Elkhart. On two of them he had Indiana licenses but on his personal car, he used a Michigan license, in the application for which he designated his place of residence as Sturgis.

The fact that appellee paid taxes in Michigan on certain capital stock in Florida and Indiana corporations tended to sustain his position that it was his intention to retain Michigan as his domicile, 19 C. J. 431, notes 1, 2 and 3. Many other cumulative facts which appeared in evidence confirm the conclusion that appellee was domiciled in Michigan and not in Indiana. These facts, with citations of cases holding each of such facts to be some evidence of domicile, follow: (a) Walton registered as from "Sturgis, Michigan," at hotels in New York, N. Y., San Diego, Cal., Miami, Florida, and many other cities and health resorts throughout the United States. *Marks* v. *Germania Savings Bank* (1903), 110 La. 659, 34 So. 725; (b) he exercised in Sturgis civil and political rights and the elective franchise, *Sanderson* v. *Ralston* (1868), 20 La. Ann. 312; *Chase* v. *Chase* (1891), 66 N. H. 588, 29 Atl. 553; *Weld* v. *Boston* (1879), 126 Mass. 166; *Smith* v. *Croom, supra;* (c) he repeatedly declared orally to the taxing authorities, and to others, that his domicile was in Sturgis and not in Elkhart. *Viles* v.

*City of Waltham* (1893), 157 Mass. 542, 32 N. E. 901, 34 Am. St. 311; (d) written declarations or recitals as to his residence in Sturgis were contained in deeds which he executed, *Will of Eaton, supra, Ward* v. *Oxford* (1829), 8 Pick. (Mass.) 476; *Cruger* v. *Phelps, supra, Smith* v. *Croom, supra;* (e) in policies of insurance, *Beecher* v. *Detroit* (1897), 114 Mich. 228, 72 N. W. 206; (f) and in mortgages, leases, contracts and other instruments. *Cruger* v. *Phelps, supra; Rucker* v. *Bolles* (1897), 80 Fed. 504, 25 C. C. A. 600; (g) Sturgis was selected by appellee as the burial place for his daughter. *Dallinger* v. *Richardson* (1900), 176 Mass. 77, 57 N. E. 224; *In re Patience* (1885), 29 Ch. Div. 976; (h) appellee Walton maintained membership in five lodges and two clubs in Sturgis and was a warden in a church there. *Helm* v. *Commonwealth* (1909), 135 Ky. 392, 122 S. W. 196; *Gardiner* v. *Brookline* (1902), 181 Mass. 162, 63 N. E. 397; *Fulham* v. *Howe* (1890), 62 Vt. 386, 20 Atl. 101.

The facts in the case of *Schmoll* v. *Schenck* (1907), 40 Ind. App. 581, 82 N. E. 805, are quite similar to those in the case at bar and the principle of law stated in that case and in the cases of *Culbertson* v. *Board, etc.* (1876), 52 Ind. 361, and *Hayward* v. *Hayward* (1917), 65 Ind. App. 440, 115 N. E. 966, 116 N. E. 746, are determinative of the questions here involved. In *Schmoll* v. *Schenck, supra,* the appellee, after the death of her husband, at their family home in Vevay, Indiana, spent about nine-tenths of her time at Peru, Indiana, where she bought a lot and built a house in which her daughter lived. She sold her homestead in Vevay, but retained large property interests in that city, paid taxes on her intangible property there and returned there about once a year to spend from two weeks to two months. She "never at any time intended to abandon her home in Vevay and to fix her home in any other place, and intends to maintain that city as her home and be

Croop *v.* Walton—199 Ind. 262

buried there." In affirming the judgment enjoining the treasurer of the city of Peru from collecting certain taxes on moneys, moneys loaned and credits assessed against her, the Appellate Court adopted the definition used in Anderson's Law Dictionary of the word "inhabitant," which word was then and still is used in our tax law, and held that it was "one who has his domicile or fixed residence in a place." The court, basing its decision upon the cases of *State, ex rel.,* v. *Casper* (1873), 36 N. J. Law 367, and *Borland* v. *City of Boston* (1882), 132 Mass. 89, 42 Am. Rep. 424, said: "Our lawmakers selected the word 'inhabitant,' a word, as we have seen, embracing locality of domicile or fixed, permanent home, and which excluded the idea of temporary residence, as particularizing the character of the residence intended where property of the class described in the complaint shall be taxed." The court held that the statute, (now §247 Burns 1926) providing that "the word 'inhabitant' may be construed to mean a resident of any place" means "a true fixed place, from which one has no permanent intention of moving," in other words, a domicile. This construction was firmly established in Indiana by the case of *Culbertson* v. *Board, etc., supra,* which held that where a person whose domicile for many years had been in this state, leased his home to another and with his family went to Europe with the intention of ceasing to live in Indiana for an indefinite time, with the expectation of again becoming a citizen of the state at some indefinite future time, probably two or three years, was held to be subject to taxation in this state during the period of his absence as a "person residing within the state," (the wording of the tax statute then in force, 1 G. and H. 69, §3). The courts decision, in effect, was that the word "residing" had reference to fixed and permanent domicile and not to temporary or transitory residence, and that a person can have but one domicile at

a time and cannot lose one domicile until he has acquired another.

The judgment is affirmed.