WILLIAM R. BEEBE *v.* TOWN OF RUPERT ET AL.

January Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT
and JEFFORDS, JJ.

Opinion filed February 6, 1945.

*Christopher A. Webber* and *Joseph B. McCormick* for the
plaintiff.

*Collins M. Graves* for the defendants.

BUTTLES, J. In this chancery suit the plaintiff seeks an in-
junction restraining the defendant town and its listers and collector
of taxes from enforcing collection of a poll tax alleged to have
been illegally assessed against the plaintiff for the year 1939, and
directing the defendants to strike from the town grand list for that
year the poll of the plaintiff and to cancel the tax assessed thereon
against him.

The bill of complaint was entered in the Bennington County
clerk's office on Feb. 13, 1941, and on Feb. 21st following an at-
torney appeared specially for the defendants and filed a motion "to
dismiss or abate the plaintiff's writ for that he has not complied
with the provisions of Secs. 1260 and 1492 of the Public Laws in

that he has not given sufficient security to each of the defendants by way of recognizance, all of which appears upon the face of the plaintiff's writ filed with the clerk of said court." This motion was overruled with exceptions to the defendants. In the record before us nothing further appears in regard to this motion. On Aug. 29, 1941, the defendants filed an answer to the complaint, and on Dec. 7, 1943, the present attorney of record appeared generally for the defendants. Thereafter hearing on the merits was had before the chancellor, findings of fact were made and decree rendered dismissing the complaint. The plaintiff comes here on exceptions to three of the findings and to the decree. In their brief, the defendants now argue that the claimed defect pointed out in the motion of Feb. 21, 1941, rendered the process void and that the court was therefore without jurisdiction.

P. L. Sec. 1260, referred to in the motion, provides that "a subpoena requiring a party to appear, to answer to a bill of complaint shall not issue until the plaintiff gives sufficient security by way of recognizance, to be taken by the officer signing such subpoena, to the adverse party, for the costs of the proceedings, as in a writ of attachment in an action at law." So much of Sec. 1492 as is here material reads: "A writ of summons or attachment requiring a party to appear and answer before a court shall not be issued, unless sufficient security is given to the defendant, by way of recognizance, by some person other than the plaintiff, to the satisfaction of the authority signing such writ, that the plaintiff will prosecute his writ to effect, and answer the damages, if judgment is rendered against him; . . . and if a writ is otherwise issued, it shall, on motion, abate."

We cannot agree with the defendants that the recognizance in this case was defective. The minute thereof appearing·on the subpoena recites that the surety recognized "as the law directs." Furthermore the adverse party here consisted of several defendants and the minute indicates that the recognizance was taken to the defendants. Whether it shall be taken jointly or severally or jointly and severally where there are more defendants than one the statute does not direct. If the defendants deemed the security inadequate they could move for additional security under P. L. 1852. *Page* v. *Baldwin,* 29 Vt 428, relied upon by the defendants, is not here in point. That was an action in debt on recognizance by four persons summoned as trustees in a previous action, and it was

there held that the proceedings were as much a distinct and separate matter against each trustee as if separate suits had been commenced upon their individual indebtedness; that separate judgments should have been rendered in favor of each trustee who was discharged; that recognizance was properly taken to each trustee as security for his separate costs and that no joint action could be maintained thereon.

In their brief the defendants contend, for the first time, that the court was without jurisdiction because the subpoena attached to the complaint was signed by a master in chancery in violation, it is said, of P. L. 1256. That section provides that "process issued out of a court of chancery shall be signed by the clerk of the court to which such process is made returnable or by a chancellor; but a master may sign subpoenas and take recognizances for costs to bills in chancery and petitions for foreclosure of mortgages returnable in any county." The word "subpoenas" as used in the second clause of this section is not restricted and would seem to include all subpoenas, whether issued to compel the attendance of parties or of witnesses. Be that as it may the defect, if it be one, could at most only bring the process within the second class of void process as set forth in *Howe* v. *Lisbon Sav. Bank,* 111 Vt 201, 14 A2d 3, and it is clear from what we have hereinbefore said that it has been waived by the defendants. See *Pollard* v. *Wilder,* 17 Vt 48; *Huntley* v. *Henry,* 37 Vt 165; *Mack* v. *Lewis,* 67 Vt 383, 31 A 888.

It is found by the chancellor, *inter alia,* that during the year 1939, and for some time prior thereto, the plaintiff was a legal resident of and was domiciled in Albany, New York; during the year 1939 the listers imposed a poll tax upon the plaintiff and set his name in the grand list of the Town of Rupert as a poll tax payer; from 1934 to date the plaintiff, together with his mother and two sisters, owned, as tenants in common, a dwelling located in the Town of Rupert; the plaintiff's mother has continuously occupied this dwelling for most of the time between 1934 and about Nov. 1, 1939; his sisters were there some of the time and the plaintiff occasionally.

P. L. 583 provides that, except as provided in Section 589, listers shall set the polls of all inhabitants of the state over 21 and under 70 years of age in the grand list of the town wherein such inhabitants reside on April 1 in each year. The finding that the

plaintiff was a legal resident of Albany, N. Y. during the year 1939 necessarily excludes his having been a resident of Rupert, Vt. on April 1 of that year. That the tax was illegal cannot be questioned. See *Boyce* v. *Sumner,* 97 Vt 473, 482, 124 A 853.

We find only one case decided by this Court in which an injunction was sought to enjoin the collection of taxes alleged to be illegal. In *Phillips* v. *Bancroft et al.,* 75 Vt 357, 56 A 9, it was alleged that the assessment resulted from the fraudulent acts of the listers. From their decision the plaintiff had appealed to the board of civil authority, under the statute, and the board's decision was adverse to her. Demurrer to the bill was sustained and the chancery suit dismissed on the ground, in effect, that the matter was res judicata. In other jurisdictions there is great diversity of holding as to when injunction is an available remedy to prevent the enforcement of a tax. "It was at one time the general rule in this country that courts of equity would under no circumstances interfere to restrain the collection of a tax by an injunction. The prompt and unembarrassed collection of taxes was considered to be so essential to the successful carrying on of the public affairs as to preclude any interference by a court of equity with the gathering in of the public revenues, . . . but the great majority of the courts have long since repudiated the doctrine that under no circumstance will equity enjoin the collection of a tax; it is now the established and recognized practice of courts of equity to exercise jurisdiction to enjoin the collection of a tax where the tax is not authorized by law, where it is assessed upon property not subject to taxation, and where property has been fraudulently assessed at too high a rate, except as its powers in this respect may be limited by statute." 51 Am Jur Taxation Sec. 1218, page 1039.

Referring to the jurisdiction of equity in such cases it is said in 4 Pomeroy's Equity Jurisprudence, 4th Ed., Sec. 1779 that "in general, the states may be divided into two classes, although in but few of the states will all the rules be found to agree. In states of the first type the jurisdiction depends upon the existence of some recognized ground for equitable relief. . . . In states of the second type the jurisdiction rests upon the illegality or invalidity of the tax, and is independent of the existence of any generally recognized ground for equitable relief." "Where a tax is illegal because levied under an unconstitutional statute, or for an unlawful purpose, or by persons having no authority whatever to make the levy,

or assessed on persons or property not subject to taxation, it is the doctrine of many cases that this is sufficient ground to justify a court of equity in enjoining proceedings for its collection, unless same as been prohibited by statute; but a stricter rule is often applied, many decisions holding that the illegality of the tax is not enough to warrant the interference of the court, but that in addition to this, it must appear that there are circumstances in the particular case which bring the application under some recognized head of equity jurisdiction, and that there is no legal remedy for the injury inflicted by forcing payment of the tax or that the party would not be adequately protected by the remedies which the law affords him, such as a review of the assessment on appeal or certiorari, action of trespass, suit to recover back the taxes paid or the like." 61 CJ 1073 Taxation Sec. 1420.

Among the cases which may be cited in support of the proposition first above stated from CJ are the following: *St. Louis Mchts. Bridge Co.* v. *Eisele,* 263 Ill 50, 104 NE 1013, where it is said that equity has power to enjoin the collection of an assessment levied without authority even though the taxpayer may not first have exhausted his legal remedy; *People's Gaslight & Coke Co.* v. *Stuckart,* 286 Ill 164, 121 NE 629; Carr v. Arnold, 239 Ill 37, 87 NE 870, which holds that collection of a tax levied without authority of law may be enjoined and in some cases parties may have their election between a legal remedy and injunctive relief; *Bednar* v. *Carroll,* 138 Iowa 338, 116 NW 315, which states that where a special remedy is provided the complaining party cannot resort to a court of equity unless the tax is illegal and void; *Blondel* v. *Woodbury County,* 203 Iowa 1099, 212 NW 335, where it is said that illegal assessments may be enjoined; *Fiscal Court of Owen County* v. *F. & A. Cox Co.,* 132 Ky 738, 117 SW 296, 21 LRANS 83, where an illegal tax was enjoined; *Baltimore* v. *Gail,* 106 Md 684, 68 A 282, enjoining the collection of a tax levied illegally; *Wyetheville* v. *Johnson,* 108 Va 589, 62 SE 328, 18 LRANS 960, 128 Am St Rep 981, enjoining enforcement of an unauthorized tax; *Pittsburgh A. & M. R. Ry. Co.* v. *Stowe Tp.,* 252 Pa 149, 97 A 197; *Croop* v. *Walton,* 199 Ind 262, 157 NE 275, 53 ALR 1386. The case last cited is much in point. The plaintiff was assessed for taxes on intangible personal property by the assessors of Elkhart, Indiana. It was found that he was domiciled in Michigan and it was held that the property was not taxable in Indiana, the court

saying "where the property is not subject to taxation the assessment is void, and its collection can be restrained by injunction, regardless of the right of appeal."

We believe that the better and more just rule is the one followed in these cases and we therefore hold that under the circumstances disclosed in the present case it was error to dismiss the bill of complaint.

The view we take of the case renders immaterial the findings of fact to which exceptions were taken and a consideration of those exceptions is therefore unnecessary.

*Decree reversed, and the defendants and their successors in office are hereby enjoined from levying, enforcing, extending or collecting any poll tax assessed against the plaintiff in the Town of Rupert for the year 1939, and the said defendants are hereby directed to cancel the warrant or warrants issued thereon and to correct the town grand list for the year 1939 by striking therefrom the poll of the plaintiff, William R. Beebe, and cancelling the poll tax assessed thereon against him.*