### Town of Stowe v. County of Lamoille, et al.

[362 A.2d 159]

No. 62-76

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed June 1, 1976

*Adams, Meaker and Darby*, Waterbury, for Plaintiff.

*Wolchik and Williams*, Morrisville, for Defendants.

**Barney, C.J.** This case concerns the collection of a county tax, along with a challenge to the legality of certain county expenditures. The plaintiff is a town in the county, and the county treasurer and the county sheriff, along with the county itself, are parties defendant. The action is advanced as one seeking declaratory judgment under 12 V.S.A. Chapter 167.

The matter began when the assistant judges adopted a budget for Lamoille County for the 1975–76 fiscal year. The money for that budget was to be raised by a three cent tax levied upon the equalized grand list of each of the towns in the county. The treasurer issued warrants to each town sufficient to pay the projected budget figure of $66,580.00. Stowe's share of this assessment was $29,729.62, or 44.6% of the total.

When the town of Stowe refused to pay the assessment, the treasurer issued an extent to the sheriff commanding him to

levy said tax upon the goods and chattels of the inhabitants of the town of Stowe. He did so.

Before reaching other issues and discussing the related facts, it is appropriate here to deal with the issue of whether or not the municipality of Stowe is a proper party to maintain this litigation. The defendants assert that there are no rights, status or other legal relations of the town itself affected by the exercise of 24 V.S.A. § 133.

It is a sufficient answer to this argument to say that the statutes authorizing the county tax sufficiently designate the town as a taxpayer to put Stowe's standing to sue in this litigation beyond question. The tax is assessed against the towns of the county, not against the taxpayers of the county. Even when, for failure to pay the tax by the town, there is a right to reach the property of town taxpayers, it is derivative, based on the failure of the town entity to fulfill its obligation. Significantly, the town may pay the tax from resources other than a tax assessment against its own citizens if its circumstances permit. The right to impress the tax upon the property holders of the town belongs only to the town. The execution of an extent is a seizure of property by the county, not the levying of a tax uniformly against town citizens in the usual sense. The town is, initially, the responsible taxpayer, and therefore a proper party here.

The actual dispute between the town and the county relates to increased activity among county officials, particularly the sheriff's department, which the plaintiff claims is beyond the scope of authorized county functions. On that basis the town refused to pay over its tax assessment because it claimed the money would be spent illegally.

The pleadings acknowledge that all proposed spending of the tax money does not involve alleged improper purposes, but only part of it. The counter argument is raised that a taxpayer may not, without penalty, merely express his displeasure at the budgetary projections by refusing to pay his taxes. His challenges can as well be preserved by payment under protest.

But what was done here went beyond a mere refusal. A declaratory judgment action was brought by the taxpayer, asking for a declaration on the issues raised by its claims of

illegality. In connection with that suit, an injunctive order was sought to permit the withholding of tax payment pending determination of the issues, and protecting against the statutory remedies against delinquency.

This approach had previous recognition as appropriate equitable relief in *Beebe* v. *Town of Rupert*, 114 Vt. 172, 41 A.2d 149 (1945) where the injunctive remedy was said to be properly applicable where the property involved, or as in that case, the taxpayer himself, was not subject to taxation. With the advent of declaratory relief, the application of the *Beebe* case was expanded in *Gifford Memorial Hospital* v. *Town of Randolph*, 119 Vt. 66, 118 A.2d 480 (1955). It is important to note, however, that although declaratory relief may exist in the presence of other remedies, the imposition of an injunction is not necessarily automatic, and will be determined by the nature of the claim in opposition to the tax and the relative position of the parties.

In this case, the matter was resolved pending final adjudication by a consent order. A portion of the tax assessed was paid over by Stowe and, in return, collection of the balance was deferred. The question of further injunctive restraint on the collection of any more of the tax is thus reserved to the ultimate disposition of this litigation.

Testing the legality of the tax as assessed requires a brief review of the Vermont county as a governmental agency. Since the function of a county is so different in the New England states than it is elsewhere, great care must be taken in the derivations of parallels and analogies from other areas.

The Vermont county is a unit of special functions. It operates as an electoral district for assistant judges, state's attorneys, and sheriffs, as well as, in some cases, state senators and probate judges. It is a judicial district for the superior court and some probate court systems, and maintains courthouse facilities. It performs some highway oversight when towns do not carry out their responsibilities with respect to town highways and bridges. It also has certain administrative responsibilities in connection with its own functions.

A county has no territory which it governs, in the sense that the state or a town governs. It passes neither statutes nor ordinances. All of its territory is overlain with state sovereignty and underlain with contiguous town government. In

those few voids known as unorganized towns or gores, governmental functions are exercised by supervisors appointed at the state level, except for the special statutorily designated supervisor for Essex County.

The limited nature of the county's governmental operation carries with it a further restriction. Since this agency has no generalized governing function, any implication of power with respect to the carrying out of functions it has been assigned must be viewed as correspondingly abridged. A municipality may have to have resort to fairly broad application of police power in a limited geographical context, since it is a true governing body. Its limits are set by the state and by the state's own exercise of that same police power. No such broad based exercise of authority is contemplated for a county.

■ The most cogent circumstance speaking for careful delineation of the authority of county officers relates to county budgets. Unlike towns or the state itself, the expenditure of county funds does not have to be authorized by its voters. 24 V.S.A. § 133 provides for the publishing of the county budget in the form of a warning, followed by a meeting of the voters of the county, with the members of the legislative bodies of the towns involved notified by registered mail.

This statute authorizes the assistant judges to "review the proposed budget of the county in light of any discussion thereon at the county meeting." Other than the overall limitation of five cents on a dollar of the equalized grand list there is no budgetary restraint on the assistant judges, or any requirement to conform the budget to the sense of the county meeting. With the recent enlargement of the terms of elected county officers from two to four years, even ballot box review is deferred two more years. This is not to suggest that county funds are not carefully and conscientiously dealt with by assistant judges. Indeed the condition of county properties generally stands as evidence of their administrative fidelity.

What is indicated by the unlimited nature of the assistant judges' financial authority is that the legislature viewed it as sufficiently circumscribed by the recognized limits of appropriate fiscal purpose already built into the law. To read the situation otherwise is to say that it was the intention of the legislature to give the assistant judges free rein as to the ex-

penditure of county money and the funding of county activities. This is a responsibility so awesome, in view of the thousands of available dollars, that certainly even expansive minded county officials would be reluctant to claim it. Another circumstance speaking strongly in support of a legislative understanding that the authority to tax is limited in scope may be found in the contrasting provisions for county voter approval when bonding is undertaken.

It is in the light of these considerations that the statutes governing county operations must be viewed. They require that interpretation be strict, and the construction of powers be limited. Any powers asserted to exist by implication of law must find their justification in the necessities springing from statutory specifics.

Turning to the issues of this case for which declaration is sought, we come first to the office of sheriff. The town of Stowe is questioning the right of the assistant judges to authorize salaries for personnel in the sheriff's office beyond the language of 24 V.S.A. § 73:

> Each county shall provide a suitable office for the sheriff and provide equipment necessary for the use of the sheriffs in the discharge of their duties as law enforcement officers, and may provide a secretary to assist the sheriff.

The language of the statute is plain; the assistant judges may, at their option, authorize the employment of a secretary to assist the sheriff. No other statutory authority spelling out the employment of salaried personnel for the sheriff by the county exists.

It was the evidence below, reduced to findings, that the sheriff's department of Lamoille County employed twelve persons whose wages for the first three quarters of 1975 totaled in excess of $15,000.00 The findings state that:

> Some of the work that has been performed for the sheriff at county expense has been classified as secretarial work for the sheriff whereas its real or actual classification should be that of radio dispatching or monitoring for the sheriff and deputy sheriffs, for the Towns of Johnson and Morrisville and for ambulance services in Lamoille County.

In his conclusions of law the trial judge found that the assistant judges had the power and authority under enumerated statutes and the powers reasonably implied therefrom to expend county funds for reasonable and necessary expenses incurred by the sheriff in performance of his statutory duties. The judge went on to conclude that the expenses actually incurred, including some not yet discussed, came within this authority.

In addition to 24 V.S.A. § 75, which directs the county to provide adequate telephone service for the sheriff, the lower court, in connection with the sheriff's powers, cited 24 V.S.A. §§ 299 and 300:

> A sheriff shall preserve the peace, and suppress, with force and strong hand, if necessary, unlawful disorder. He may apprehend, without warrant, persons assembled in disturbance of the peace, and bring them before a district court, which shall proceed with such person as with persons brought before it by process issued by such court.
>
> A sheriff or other officer in the discharge of the duties of his office, for the preservation of the peace, or the suppression or prevention of any criminal matter or cause, may require suitable assistance.

These statutes are a recital of certain functions of the sheriff's office that derive from common law. The sheriff occupies an office that reaches far back into English history. That office, like that of justice of the peace, was identified with the county concept brought to this country by the English colonists. The duty to suppress riot, disturbance and insurrection, and the authority to command assistance from the immediate able-bodied, sometimes called a posse comitatus, came along as an ancient function of the office.

This historical authority has never been held in this state to support the establishment of a paid county police force. This function has been performed by local police forces at the municipal level, and at the state level by the state police force. Traditionally, the office of sheriff was supported by fees, including those for service of civil and criminal process. The compensation for deputies was similarly the fees they earned. On the civil side, this is still the case. At one time the legislature designated the salary paid to the sheriff to be in lieu of

his criminal fees. See 32 V.S.A. § 1182 prior to the amendments in 1973. This is no longer in the statute, so the sheriff presumbly gets appropriate criminal as well as civil fees besides his salary. See 32 V.S.A. §§ 1591–97. Thus the burden of the sheriff's compensation has not been a part of county expenses.

No. 302 of the Acts of 1969, section 4 provided:

> $110,000.00 is appropriated to justice—county sheriffs for the purposes of employing not more than fifteen full-time deputy sheriffs. The hiring of a full-time deputy by a sheriff and the salary shall be subject to the approval of the commissioner of administration and the attorney general.

Here again the hiring, the payment and the approval were all undertaken under the authority of the state. The arrangement still continues. See 32 V.S.A. § 1182. Nothing indicates any comparable authority in the county government.

Thus an examination of the statutory pattern and the history of the office discloses no suggestion that the county is authorized to employ a constabulary through the sheriff's office. Without enabling legislation, expenditures for such a purpose are not part of a proper county function.

Stowe also challenges the operation of the former county jail as a lockup, together with associated expenses. At the time of establishment of the regional correctional centers, the statutes authorizing counties to operate jails were repealed. No. 345 of the Acts of 1967 (Adj. Sess.), § 20, as amended by No. 33 of the Acts of 1969, § 1, provided for the acquisition of suitable county jails for development as regional correctional centers. Such centers are operated at state expense. The jail in Lamoille County was not one of these.

There was also a provision for the designation of lockups. Town and village lockups and county jails were eligible for such designation by the commissioner of corrections. He was also empowered to appoint the sheriff of that county to maintain and operate a county jail designated a lockup. The question then becomes one of determining at whose expense this lockup will be maintained and operated.

Certainly the sheriff himself cannot be personally required to finance the operation of the lockup. Under 24 V.S.A. § 131 the assistant judges are given the care and superintendence of county property and are obligated to keep the courthouse, jail and other county buildings insured and make needed repairs and improvements.

Under 28 V.S.A. § 101(8), the department of corrections, under the direction of the commissioner, is charged with the responsibility of entering into agreements for assistance in support of the operation of jails or lockups in accordance with criteria established by the department. Furthermore, the commissioner, under 28 V.S.A. § 102(b)(11) is authorized to contract for services or purchase, lease or rent real or personal property to carry out the functions of the department.

The department of corrections has issued certain standards with respect to the operation of a lockup and its physical structure. Insofar as these may properly be classified as repairs or improvements to the jail itself, the assistant judges have the statutory authority to expend county funds for such purposes. Implicit in this is their agreement to have that jail designated a lockup. Clearly, neither the sheriff nor the commissioner of corrections can compel the acceptance of this designation or authorize directly the expenditure of county tax money.

It has already been determined that there is a statutory limit upon the personnel a sheriff can hire from county funds, so that the cost of manning the lockup must come from other sources, presumably the state. Likewise, since the sheriff functions as the operator of the facility by designation of the commissioner, the authorization of 24 V.S.A. § 73 for the county to equip him as a law enforcement officer is not available, and the personal property and associated services such as laundry and the like must also be otherwise financed. Since the correctional system is now a state function and the requirements state requirements, this result is not unexpected or unreasonable.

There is also a challenge to the payment of premiums for bonds and insurances for the sheriff and deputy sheriffs. Ordinarily it might be said that it was not inappropriate for

some or all of this expense to be borne by the county. However, the legislature has made it quite clear that this is not to be. In 24 V.S.A. § 331, relating to another county officer, the high bailiff, the statute clearly provides that the cost of his bond shall be paid by the county. That authorization does not appear in the statutes relating to the sheriff, and its omission must be taken to be deliberate.

It should be noted that none of this can be taken as saying there is anything improper or undesirable about the activities here involved. That is not the issue. This opinion deals only with the authority to have the county tax pay the expenses involved. The defendants argue for the broadest kind of interpretation of the county taxing power. This position is not consistent with the authorizations of the two assistant judges to determine the budget.

The plaintiff town also argues that the presented budget is a binding commitment. The provisions of 24 V.S.A § 133 do not require the limitation, and we do not so hold. The limitation that governs is the specificity of the authorizing statutes, a proposition early recognized as to counties in *Hyde* v. *County of Franklin*, 27 Vt. 185, 186 (1855).

The consequence of the decision reached here is that the intended expenditures and corresponding tax must be reevaluated in the light of what has been decided. The budget proposals must be tested according to the standards advanced and the assessment amended to conform. This is best accomplished below in the presence of all available data. The cause will be returned below for that purpose.

*The judgment of the lower court is reversed, and the cause is remanded for a declaration of the rights of the parties including those that may be appropriately joined under V.R.C.P. 19, with respect to the issues raised in accordance with the views expressed in the opinion. The declaration shall include:*

*(1) a determination as to which activities currently engaged in are proper for the county, and a prohibition by way of injunction against those not proper;*

*(2) a determination of the proper county taxes assessable against the towns of the county, including Stowe, based on the*

*cost of lawful county activities for the period commencing February 1, 1975, until final disposition;*

*(3) a recalculation of the sums correctly due from the towns to the county based on the proper county taxes, and a determination of the state of the accounts between each town of the county and the county based upon the recalculation;*

*(4) the issuance of such order or orders directing such payment or refund as may be required to bring the tax accounts of the towns with the county into correct balance based on the recalculated taxes, having due regard for the current and future availability of assets to the towns and the county in scheduling the adjusting payments, and imposing such terms and conditions as equity may require;*

*(5) the scheduling of this matter on remand to accomplish the hearing and determination as promptly as possible under the circumstances.*

*The mandate of the Court will issue June 11, 1976, and the clerk shall correspondingly remit the cause. V.R.A.P. 41(a).*