Stout v. Leonard.

---

JEROME L. STOUT, PLAINTIFF IN ERROR, v. AMASA LEONARD, DEFENDANT IN ERROR.

1. On a writ of error to review a decision presenting a mixed question of law and fact, the conclusion of the court below on the facts, must be plainly erroneous to induce the Court of Errors to disturb the judgment of the court below, on the ground of error in its conclusion on the facts.

2. A debtor having a residence in this state, and also a residence elsewhere, is liable to be sued by attachment, if, at the time, he is not in this state, and does not dwell or have his usual place of abode here.

In error to the Supreme Court.

*H. C. Pitney* and *A. Browning*, for plaintiff in error.

*A. Mills* and *C. Parker*, for defendant in error.

The opinion of the court was delivered by

THE CHANCELLOR. On the 14th of February, 1872, a writ of attachment was issued out of the Circuit Court of the county of Morris, at the suit of Jerome L. Stout, against the property of Amasa Leonard, upon an affidavit made by Stout, that Leonard was indebted to him in the sum of $4202.90, and that Leonard was not, to the knowledge or belief of the affiant, resident, at that time, in this state. On the 9th of March following, a rule to show cause why the writ should not be discharged, on the ground that, at the time of issuing the writ, Leonard was a resident of New Jersey, was granted by the judge holding that court. Under that rule, testimony was taken on both sides, and, after argument, the rule was discharged. This adjudication was removed into the Supreme Court by *certiorari*, and at the November Term, 1873, was reversed. The judgment of the Supreme Court is before us on error.

It is proper to premise, before entering on the consideration of the question in the cause, that where a writ of error is brought to review a decision such as that which this case presents, one of mixed law and fact, the conclusions of the court below on the facts must be plainly erroneous to induce this court to disturb its judgment on that score.

The question presented for consideration is, whether Leonard, at the time when the writ was issued, was a resident of this state, within the meaning of the attachment act. It appears, from his own testimony, that he was not then in this state, and had not been since the first day of February, which was thirteen days previous to the issuing of the attachment. He had a house in the city of New York, and a farm in the township of Mendham, in the county of Morris, in this state. He was living in the house in New York. His family there consisted of his wife, his daughter, an adopted daughter, and

two lady boarders, one of whom was his wife's sister, and some servants. At the farm were his farmer and the farmer's wife, an adopted son of Leonard's, Leonard's mother-in-law, and a colored boy whom he had charge of, and who worked on his farm. His place of business was in the city of New York. His own statement is, that he purchased the farm in 1864, and moved on it in November of that year ; that his family lived there during nearly all of the ensuing winter, and that since that time they have kept house there continuously ; that he brought his furniture from New York to the farm, except some small articles, and it has remained there ever since ; that when he came out in November, 1864, he was keeping house in New York ; that he has broken up housekeeping in New York twice since then—the first time in 1867, and the last in 1869 ; and in April of the last mentioned year he gave up keeping house in New York altogether, and kept house only on the farm, until the following December or January, when he rented a place in New York temporarily, until the following May, when he returned with his family to the farm, and went back to New York again in December, 1870 ; and ever since that time he has kept house continuously in his own house in New York. The last place at which he voted, and his place of voting, is Mendham township, where he voted in the fall of 1870, having determined to make that his permanent place of residence. On the subject of his actual occupation of the two residences he says, that all his immediate family ordinarily live on the farm in the summer time, and in New York in the winter ; he sometimes rents the house in the city during the summer season, and sometimes closes it up entirely for the season ; most generally his immediate family come to the farm in March or April, and return to the city in November or early in December.

From this statement it is apparent that he has, as many other persons have, two places of residence, one for the summer and the other for the winter, both of which he owns and maintains throughout the year.

When the attachment was issued he was living in New York, and at that time that was his usual place of abode, wherever his domicil might have been. The construction given by the Supreme Court, in *Perrine* v. *Evans*, 6 *Vroom* 221, to the section of the attachment act, under which the writ in this case was issued, is the true one. "Debtors who reside out of this state," means debtors who have no abode here. Residence is not domicil, though domicil is the legal conception of residence. Domicil is residence combined with intention. It has been well defined to be a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of residence. His place of residence may be, and most generally is, his place of domicil, but it obviously is not by any means necessarily so, for no length of residence without the intention of remaining will constitute domicil. "An actual residence," said the court, in *City Bank* v. *Merrit*, 1 *Green* 131, 134, in construing the section above referred to, "is the predicament contemplated by the statute, and no distinction is made between a temporary and a permanent character—between a residence for a summer or for life. In common language, it is not more usual than correct to say that a person resides in the city during the winter and in the country during the summer." In that case the attachment was set aside because it appeared that the defendant was, when it was issued, temporarily resident in this state at his summer abode. To the like effect see *In re Alexander Thompson*, 1 *Wend.* 43; *Haggart* v. *Morgan*, 5 *N. Y.* (1 *Seld.*) 422.

That the defendant in this suit was not in this state when the writ was issued and served, is admitted. There could have been, therefore, no personal service of any process upon him. To have effected a service of a summons on him under the circumstances, it must have been by "leaving a copy of it at his dwelling-house or usual place of abode at least six entire days before its return." *Practice Act, Nix. Dig.* 724.

But his dwelling-house and usual place of abode were then in the city of New York. No lawful service of a summons could therefore have been made on him here. The statute provides a remedy for creditors against the property of debtors who reside out of this state. In determining whether his debtor is within the provision of the statute, the creditor and the courts must necessarily be guided by the ordinary and obvious *indicia* of residence or the absence of such indications, and the purposes of the act are not to be thwarted by the secret mental resolves or intentions of the debtor on the subject of his domicil. The sixtieth section provides that the " act shall be construed in all courts of judicature in the most liberal manner, for the detection of fraud, the advancement of justice and the benefit of creditors."

That would not be a liberal construction which would permit the various and difficult considerations which may enter into the question of domicil, to vex and foil the creditor in his honest pursuit of his remedy under the statute, in a case where his debtor is neither actually resident or commorant in this state, but has his usual place of abode beyond its borders.

The judgment of the Supreme Court should be reversed.

*For reversal*—The CHANCELLOR, CHIEF JUSTICE, BEDLE, DEPUE, VAN SYCKEL, CLEMENT, GREEN, LILLY, WALES. 9.

*For affirmance*—None.