In re Adoption of Donna Lynn Mullins
and Dana Lee Mullins, Minors.

Petition of Paul Simmons and wife
Carrie Lorene Simmons.

412 S.W.2d 896.

(*Knoxville,* September Term, 1966.)

Opinion filed February 24, 1967.

Bess Blake, Nashville, for appellant, Public Welfare Department.

T. R. Chadwick, Clinton, for appellees.

Mr. Chief Justice Burnett delivered the opinion of the Court.

We heretofore granted the petition for certiorari in this case because of the legal questions involved which will hereinafter be set forth. The case has been ably briefed, and we now have the matter for determination.

The original petition herein was filed for the purpose of adopting the two minor children. The Department of Public Welfare was made a party as provided by law, under orders of the court, and the matter having been determined below contrary to the position of the Department of Public Welfare by the trial court and the Court of Appeals, the Department filed this petition which was granted.

The petition originally was filed by Simmons and his wife, the proposed adoptive parents of twin girls. This petition alleged that these proposed adoptive parents had no children of their own and were able and willing, and were suitable parents for the purpose of this adoption.

The record shows that these petitioners were married in Toledo, Ohio, on April 4, 1958; that Paul Simmons is

32 years of age and is employed by Allied Wheel Products, Inc., and Carrie Lorene Simmons is 38 years of age, a homemaker, and is able to devote her full time to the proper care of these children.

The mother of these children, who were born in Fairview Hospital, Cleveland, Ohio, on February 5, 1964, joined in this petition. The petition makes all necessary prayers for the preliminary investigation with respect to the fitness of the proposed adoptive parents as is required by Section 16, Chapter 202 of the Public Acts of 1951, through the Welfare Department.

The Chancellor made the proper order to the Welfare Department. The mother of the children appeared in open court at the hearing. Immediately after the notice of the order the Director of Public Welfare proceeded in the strictest confidence, as required by law. After making an investigation through the Public Welfare Department in the State of Ohio, particularly at Toledo, Ohio, the Public Welfare Department filed a plea in abatement, which, among other things, says:

"That the petitioners to adopt have not lived or maintained a regular place of abode in Tennessee, or on federal territory within the boundaries of Tennessee for one (1) year next preceding the filing of the petition to adopt as is required by Section 36-105 T.C.A., and this Honorable Court is without jurisdiction to hear the petition to adopt filed in this cause."

The Chancellor overruled this plea in abatement, stating the question was close. On appeal the Court of Appeals affirmed.

By this plea in abatement the provisions of T.C.A. sec. 36-105 are invoked in an effort to show that under our

Adoptive Act the court had no jurisdiction. That Act provides:

"Any citizen of the United States over twenty-one (21) years of age may petition the chancery or circuit court to adopt a minor child and may pray for a change of the name of such child. If the petitioner has a husband or wife living, competent to join in the petition, such spouse shall join in the petition; provided, however, that if the spouse of the petitioner is a natural parent of the child to be adopted, such spouse need not join in the petition, but need only to give consent as provided herein; *provided further, that the petitioner or petitioners shall have lived or maintained a regular place of abode in Tennessee, or on federal territory within the boundaries of Tennessee for one (1) year next preceding the filing of the petition without regard to the petitioner's legal residence.* Provided, however, that where the petitioner is in military service stationed out of the state but had lived or maintained a regular place of abode within Tennessee for one (1) year next preceding entering military service, the aforesaid residence requirement shall not apply." (Emphasis ours.)

The plea in abatement, as above quoted, raises the question of whether or not under the facts of this case the petitioners "have lived or maintained a regular place of abode in Tennessee, or on federal territory within the boundaries of Tennessee for one (1) year next preceding the filing of the petition without regard to the petitioner's legal residence." Thus it is, under this language, we must determine whether or not under the facts of this case these petitioners have lived or maintained a regular place of abode in Tennessee for one year next preceding the

filing of this petition. Of course, this brings us to the question of what the Legislature meant when they used this language.

In *Clements v. Morgan,* 201 Tenn. 94, 97, 296 S.W.2d 874, 875, under unquestioned authority, we held that this adoptive statute "must be complied with in all things." And that:

"The right of adoption is not a natural one and was unknown to the common law * * *

"The adoption of a child is governed by statute and to effect a legal adoption it must be strictly complied with."

In the latest opinion of this Court on this question, *In re Van Huss Petition,* 207 Tenn. 168, 338 S.W.2d 588, we denied an adoption under a literal interpretation of the residence requirements inserted into this Act by the statutes of 1959 (Chapter 223, sec. 1, Public Acts of 1959). Under this 1959 statute although petitioners in adoption proceedings were not required to make Tennessee their legal residence, they were required to "have lived, maintained a home and been physically present in Tennessee, or on federal territory within the boundaries of Tennessee for one (1) year next preceding the filing of the petition * * *"

In the *Van Huss* case, all of the requirements of the adoptive statutes were met except for the provision that the persons seeking to adopt had not been "physically present in Tennessee" as required by the Act. We pointed out that adoption is entirely statutory in nature, as above said, and there must be strict compliance with all the statutory requirements. This was a three to two decision, and subsequent to this opinion the General

Assembly in 1961 revised the residence requirements so as to eliminate the problem we had in the *Van Huss* case. The new statute, as contained in the 1961 amendment, is as it is today that the petitioners "shall have lived or maintained a regular place of abode" in Tennessee or on federal territory within the State during the year preceding the filing of the petition. It will be noticed that the Act now uses the disjunctive "or" and eliminates the requirements of physical presence in the State. The Amendment contains a provision that Service personnel are not subject to residence requirements when stationed out of the State, if they did live and maintain a regular place of abode in Tennessee for one year prior to entering the Service.

This Act, the 1961 Act, which is Chapter 150 of the Public Acts of that year, says that the language "maintained a home and been physically present" is stricken and there is to be inserted in lieu thereof "or maintain a regular place of abode"; then, of course, there is the other provision just alluded to about military personnel. The only change thus in the Act now before us, as far as here applicable, is that the physically present provision of the Act under consideration in the *Van Huss* case has been stricken and the words now in the Act, "or maintain a regular place of abode," are inserted in lieu thereof. Thus it is, in considering this plea in abatement we must determine whether or not there petitioners "have lived or maintained a regular place of abode in Tennessee * * * for one (1) year next preceding the filing of the petition without regard to the petitioner's legal residence."

The record in the present case shows that these two adoptive petitioners were both born and reared in Ten-

nessee; went to school in Tennessee; their parents resided in Tennessee; that the father of the petitioner, Mr. Simmons, still lives in Tennessee at Briceville, Anderson County. Mr. Simmons' mother is dead. He completed elementary school grades at Briceville. He is a registered voter in Anderson County, Tennessee, and even though he registered to vote in Toledo, Ohio, he has never voted there. He is likewise subject to the military service Draft Board of Anderson County, Tennessee, and at no other point. His work requires him, at the orders of his employer, to go into several different states and perform the same work that he was doing in Toledo, Ohio. Both petitioners intend to retire when they are eligible, and continue the rest of their lives in Tennessee.

The record shows that Mr. Simmons owns property in Anderson County and says that his address there is Route No. 2, Lake City, Tennessee, the home of an uncle. The record also shows that he has been in Toledo, Ohio, since shortly before his marriage there in 1958; that he owns a home in Toledo where he and his wife live; and that he has been living there since 1959. The main office of his employer is located at Toledo, Ohio, and the Simmons receive their mail there, yet they say in their testimony that they regard Anderson County as their domicile. They say they were advised by a lawyer in Ohio that under such circumstances it would be necessary for them to file this petition for adoption in Tennessee even though they had been living and owned this home in Toledo, Ohio, for some time prior to this adoption proceeding.

Be that as it may, the facts that they state as to where they live, what they are doing, etc., if this was in the State of Tennessee, clearly under this adoptive statute

they would be entitled to file a suit in this State, but they own a home, live and reside in Toledo, Ohio. There is some evidence in the record that a letter was written to Mr. and Mrs. Simmons in Anderson County, where they were supposed to live, by the Welfare Department of Ohio, but it was returned to them and the Welfare Department of Ohio finally got their address in Toledo through their Ohio attorney. However, in their testimony they claim to still be residents of Tennessee and intend to return here at sometime. The question is whether or not under these circumstances this meets the requirements of the statute above.

The Court of Appeals concluded in effect that Tennessee was their domicile and that in the wording of the statute the word "abode" would be considered as "domicile." They likewise felt that, in view of the purpose of the Legislature in amending the statute herein, it adopted as its policy the language of the dissenting opinion in the *Van Huss* case, and that the purpose in changing the Act, as above referred to, was to "broaden and extend" the jurisdictional authority of the adoptive court, "to meet just such a situation as we have in the instant case." With this reasoning we are unable to agree.

██ As above said, and as has been said many times, we must give this Act a strict construction and determine what the language of the Act means. We do not necessarily give it a literal construction, but we base our conclusions on what is the legal construction of the language in question. In the first place, the Act specifically provides that these things are required, that is, that those seeking to adopt must live or maintain their regular place of abode in Tennessee for a year next preceding

before filing this petition regardless of their legal residence. In other words, a resident of another State could live in this State, have their home here, their regular place of abode here for a year before filing, and have a right to file adoptive proceedings in this State; therefore, the question of legal residence of these petitioners plays no part in the right to file adoptive proceedings in this State.

■ What does the language, "a regular place of abode in Tennessee" mean? Webster's Third International Dictionary says that the word "abode" means "a place where one abides or dwells; home (a cottage became their—)."

Bouvier's Law Dictionary says that "abode" means "Where a person dwells; it is the criterion determining the residence of a legal voter, and which must be with the present intention not to change it" citing authority. Black's Law Dictionary says that "abode" is "One's home; habitation; place of dwelling or residence. Ordinarily means 'domicile,' citing authorities. The place where a person dwells", citing authorities. By reference to Words & Phrases, Permanent Edition, Volume 1, is found a definition of the word "abode" from decisions from many jurisdictions, but primarily the word is used in the statute permitting substituted service of process, but generally without question under all of these authorities the word "abode" means the place where a person dwells. The way it is used in this statute now before us comes close to the way the word has been used and adopted by various states under substituted service statutes.

■ As we see it the reason for this language of the Legislature is so the Department of Public Welfare of

the State may have access to the children and adoptive parents for a period pending permanent adoption. They would not have such access and the right to carry out their statutory duties and make the various investigations, if these children were adopted in another state, but they must have certain rights and access to make their statutory required investigations of such a situation in this State. It is hard for us to see how any other construction can be given the Act than that it requires that the people live—they don't necessarily have to be physically present—or have their home in Tennessee at the time, and shall have had it for at least a year before they adopt. The question of their voting residence and things of that kind is not the question, but the question is where these people have been for a sufficient length of time for the Welfare Department to get a fair summary or idea of what kind of people they are.

The Alabama court in *Hudson v. Birmingham Water Works*, 238 Ala. 38, 189 So. 72, 73, held that the word "abode" is one's fixed place of residence for the time being; a place where a person dwells. It seems to us that this is really the commonly accepted meaning of the term and was what the Legislature meant when this language was placed in the Act. The use of the language "regular place of abode" is much more restrictive than the word "residence" and really means where the person is actually living at the time adoptive proceedings are instituted and not their intent to return to that place and live at a later date.

The New Jersey court in *Kurilla v. Roth*, 132 N.J.L. 213, 38 A.2d 862, in considering a substitute service process statute has used certain language and definitions that

we think are particularly applicable in the instant case. That court said:

"* * * But 'domicile' and 'residence' or 'abode' or 'usual place of abode' are not convertible terms. 'Domicile' is the relation which the law creates between an individual and a particular locality or country. In a strict legal sense, the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning, and from which he has no present intention of moving. 17 Am. Jur. 588, 590; 28 C.J.S. Domicile sec. 1, p. 3. It is the place with which he has a settled connection for certain legal purposes, either because his home is there, or because that place is assigned to him by law. *Croop v. Walton*, 199 Ind. 262, 157 N.E. 275, 53 A.L.R. 1386; *Fisher & Van Gilder v. First Trust Joint Stock Land Bank*, 210 Iowa 531, 231 N.W. 671, 69 A.L.R. 1340; *Shenton v. Abbott*, 178 Md. 526, 15 A.2d 906. This is the rule adopted by the American Law Institute. A.L.I. Conflict of Laws, sec. 9. And every person, in all circumstances and conditions, is deemed to have a domicile somewhere; and, in general, a domicile once established continues until superseded by a new domicile, and the old domicile is not lost until a new one is acquired. *In re Dorrance's Estate*, 115 N.J.Eq. 268, 170 A. 601. * * *

"A person may have several residences or places of abode, but he can have only one domicile at a time. Domicile of choice is essentially a question of residence and intention—of factum and animus. It involves an exercise of volition. *In re Dorrance's Estate*, supra. And he may have his residence in one place, while his

domicile is in another. *Stout v. Leonard,* 37 N.J.L. 492; *Duke v. Duke,* 70 N.J.Eq. 135, 62 A. 466, affirmed 72 N.J.Eq. 434, 65 A. 1117. There are certain legal rights and privileges which pertain to 'residence', rather than to 'domicile.' One's 'home' may be relinquished and abandoned, while one's 'domicile,' upon which may depend certain civil rights and duties, may in legal contemplation remain. 17 Am.Jur. 590, 592, 597. See, also, 148 A.L.R. 1413. The exercise of elective franchise is secured to those in military service by Article II, paragraph 1, of the State Constitution N.J.S.A.''

In the paragraph above this, just quoted, this court likewise says:

'' 'Abode' is one's fixed place of residence for the time being—the place where a person dwells. One's 'usual place of abode,' in the statutory view, is the place where one is 'actually living' at the time when the service is made'' citing authorities.

■ So it is, we think from all the authorities we have examined clearly, under the facts of the instant case, these petitioners had not lived in Anderson County or in the State of Tennessee one year next preceding the filing of the petition herein nor did they have a regular place of abode in Tennessee for one year next preceding the filing of this petition.

■ The result is that we are forced to sustain the plea in abatement to this action. We, of course, have reached this conclusion because there is no common law right of adoption in this State, and since there is none the only right that one would have for adoption in Ten-

nessee exists by statute. As the statute now stands we must strictly construe it. In other words, "it must be strictly complied with," as is held by all authorities.

The plea in abatement of the Public Welfare Department is sustained.