IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 16, 2010 Session

**IN THE MATTER OF SHELBY L. B.**

**Appeal from the Chancery Court for Williamson County**
**No. 1181A      Timothy L. Easter, Judge**

**No. M2010-00879-COA-R9-PT - Filed March 31, 2011**

The divorced mother of a nine year old girl joined with an unrelated man in a petition to terminate the parental rights of the child's father and to adopt, with the intention of having the unrelated man adopt the child in place of the father, while the mother retained her own parental rights. The trial court granted the father's motion to dismiss the petition, holding that the petitioner lacked standing because the statutes governing termination of parental rights and adoption require that the mother relinquish her parental rights or that they be terminated before an adoption by an unrelated individual or non stepparent may proceed. We affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal;**
**Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Deana C. Hood, Franklin, Tennessee, for the appellant, J. E. N.

Thomas H. Miller, Nashville, Tennessee, for the appellee, S. L. B.

**OPINION**

**I. A TERMINATION PETITION**

This appeal involves legal issues only, but a brief account of the circumstances leading up to it is necessary for an understanding of its context. Shelby L.B., the child at the center of this dispute, was born on July 1, 1999 to G.S.B. ("Mother") and S.B. ("Father"). In May of 2001, when the child was less than two years old, the Circuit Court of Davidson County granted Mother a divorce from Father on the ground of cruel and inhuman treatment.

The trial court granted custody of the child to Mother, and declined to grant Father any visitation rights at that time, "on an affirmative finding that it would not be in the best interests of the minor child for the Husband to have visitation until such time as he makes proper application to this honorable court with proof of alcohol and drug treatment." The divorce decree also enjoined Father from coming around Mother or the child "for the purposes of physically abusing, threatening, harassing, harming, cursing, endangering, or in any other manner intimidating the Wife or minor child, whether in person or by telephone, whether at her residence, work place or at any place she might be."

Father did not appear at the final divorce hearing. The decree indicates that he was living in Missouri at the time it was conducted. Mother moved to Williamson County, Tennessee at some point, where she became friends with the appellant in this case, a forty-two year old man named J.E.N. The attorney for J.E.N. stated at oral argument that the two are not married to each other, that J.E.N. is single, and that J.E.N. has acted as a parent to the child since she was five years old.

On August 11, 2008, Mother and J.E.N. filed a joint petition in the Chancery Court of Williamson County to terminate Father's parental rights and to allow J.E.N. to adopt the child. The petitioners alleged as grounds that Father had abandoned his daughter by failing to pay child support and failing to visit. *See* Tenn. Code Ann. § 36-1-113(g). The petition further states:

> Petitioner [J.E.N.] has developed a loving parent-child bond with the minor child. The minor child refers to him as "Dad" or "Daddy." Petitioner [J.E.N.] has provided for the minor child financially and has paid for one-half of her medical expenses, extra-curricular expenses and other needs. Petitioner [J.E.N.] has spent substantial time with the minor child forming a parent-child bond with her and he has taken her on vacations, extra-curricular activities and events. Petitioner [J.E.N.] is financially stable and in all respects the fit and proper person to be the parent of the minor child. It is in the minor's best interest to be adopted by Petitioner [J.E.N.]. Petitioner [Mother] consents and joins in with the adoption of the minor child by Petitioner [J.E.N.].

Mother and J.E.N. filed an Amended Petition on September 4, 2008. The amended petition contained substantially the same allegations and claims as did the original petition, but added the following allegation:

> That the Petitioner [Mother] has exercised physical custody of the minor child for the entirety of the child's life and that Petitioner [J.E.N.] has exercised physical custody of the minor child for substantial times and durations of the

minor child['s life] and that the minor child currently resides with [J.E.N.] in Williamson County, Tennessee during the school week and attends Williamson County schools.[1]

Father, who was still living in Missouri, retained local counsel, and on October 3, 2008, he filed an answer to the amended petition in which he denied that he had willfully abandoned his child. He asserted that any failure on his part to visit his child was not willful because the restraining order against him prevented him from seeing her, and he alleged that he had attempted to establish a relationship with the child, but that Mother had failed to cooperate with him. He also argued that Mother was not legally authorized to consent to the adoption of the child by J.E.N. or by anyone other than a step-parent.

Father's answer also included a counter-petition, in which he asked the court to modify the final decree of divorce by awarding him parenting time. He attached exhibits to his counter-petition in the form of certificates showing that he had completed two programs related to the treatment of substance abuse. The trial court appointed a Guardian ad Litem for the child on November 7, 2008, pursuant to Supreme Court Rule 13(1)(d)(2)(D).

On October 5, 2009, Father filed a motion under Tenn. R. Civ. P. 12.02(6) to dismiss the amended petition for failure to state a claim. Father's motion discussed in more detail the statutory argument set out in his answer. He contended that the proposed adoption of his child by J.E.N. was a matter beyond the authority of the courts because the meaning of the statutes he had cited was that the parental rights of **both** parents must be terminated or surrendered before anyone except a stepparent can adopt a child.

On the same day, Father also filed a motion for default judgment on his counter-petition because Mother had not filed a timely answer. Shortly thereafter, Mother did file an answer. She denied that she had willfully prevented Father from visiting with the child, and she placed the onus on him for failing to return to court to prove to any judge "that he was capable of providing a healthy, positive interaction with the minor child."

The trial court conducted a hearing on Father's motion for default judgment and his motion to dismiss the petition for termination of his parental rights. After the hearing but before the trial court entered an order in this case, Mother filed a notice that she was

_____

[1] This allegation was apparently added in order to satisfy the requirement of Tenn. Code Ann. § 36-1-115(b) which states that a party filing a petition to adopt must have physical custody of the child, or have the right to receive custody, at the time the petition is filed. *See In re Adoption of M.J.S.*, 44 S.W.3d 41, 49 (Tenn. Ct. App. 2000). Whether the allegations in the petition would be found to satisfy the statute is arguable, but we need not determine that issue.

voluntarily non-suiting her claim against Father without prejudice. The trial court's order, entered on November 19, 2009, dismissed Father's motion for default judgment as moot, and continued the hearing on his motion to dismiss the petition for termination of his parental rights.

After hearing arguments from both parties on the scheduled date, the trial court took the case under advisement. On January 12, 2010, the court entered an order dismissing the petition. The court agreed with Father that Tenn. Code Ann. § 36-1-117(a) and (f), when read together, indicate that the parental rights of both parents must be terminated before anyone except a stepparent can adopt a child. The court further found that since J.E.N. was not married to Mother, and since he was not the child's legal guardian, he was a legal stranger to the child, and he therefore lacked standing to petition the court to terminate Father's rights or for adoption. The order further stated, "Thus, the Court cannot grant the relief that J.E.N. is requesting."

Father's counter-petition to set visitation had not yet been heard, so J.E.N. asked for interlocutory review of the trial court's dismissal of his petition for termination and adoption. *See* Rule 9 of the Tennessee Rules of Appellate Procedure. Both the trial court and this court agreed that interlocutory appeal was appropriate and "could result in the avoidance of needless, expensive and protracted litigation . . ." thereby setting the stage for this appeal.

## II. THE STANDARD OF REVIEW

In this appeal, we are called upon to interpret and apply to J.E.N.'s petition the statutes governing termination of parental rights and adoption. Therefore, this appeal involves only questions of law, and we review the determination of the trial court *de novo*, without a presumption of correctness. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). Our role in statutory interpretation is to determine and implement the legislature's intent. *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004).

The most basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. *In re Angela E.*, 303 S.W.3d at 246; *State v. Wilson*, 132 S.W.3d at 341; *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000). The court must ascertain the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope. *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993); *see Gleaves*, 15 S.W.3d at 802; *Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn. 1996); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced

or subtle interpretation that would limit or extend the statute's application. *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) (citing *State v. Pettus*, 986 S.W.2d 540, 544 (Tenn. 1999)).

The Tennessee Supreme Court recently reiterated the applicable principles for statutory interpretation:

> When dealing with statutory interpretation, well-defined precepts apply. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008). Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline*, 263 S.W.3d at 836. Courts must presume that a legislative body was aware of its prior enactments and knew the state of the law at the time it passed the legislation. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995).

*Estate of French v. Stratford House*, --- S.W.3d ----, 2011 WL 238819, at *5 (Tenn. January 26, 2011).

### III. ADOPTION AND TERMINATION OF PARENTAL RIGHTS STATUTES

J.E.N. (and Mother initially) filed one petition seeking to (1) terminate Father's parental rights to Shelby, and (2) order the adoption of Shelby by J.E.N. Tennessee law authorizes the bringing of a single petition to accomplish both actions. Tenn. Code Ann. §36-1-113(a) (courts have jurisdiction "to terminate parental or guardianship rights in a separate proceeding, or as part of the adoption proceeding . . . .")

There is no common law right of adoption in Tennessee, so the right of adoption is derived from statute only. *In re Adoption of Mullins,* 412 S.W.2d 896, 899 (Tenn. 1967) ; *State ex rel Shaver v. Shaver*, 01A01-9610-CV-00474, 1997 WL 401827 (Tenn. Ct. App. July 18, 1997). Because the adoption statutes are in derogation of the common law, they

must be strictly complied with. *Delamotte v. Stout*, 340 S.W.2d 894, 895 (Tenn. 1960); *In re K.A.Y.,* 80 S.W.3d 19, 23 (Tenn. Ct. App. 2002). Our courts have also stated many times that the adoption statutes should be strictly construed. *In re Adoption of Mullins,* 412 S.W.2d at 899; *Clements v. Morgan*, 296 S.W.2d 874 (Tenn. 1956); *In re K.A.Y.*, 80 S.W.3d at 23; *Black v. Washam*, 421 S.W.2d 647, 648 (Tenn. Ct. App. 1967). Where the interest of the child conflicts with the interest of an adult, however, the statute should be liberally construed to protect the interest of the child. Tenn. Code Ann. § 36-1-101(c).[2] *See generally In re Adoption of Johnson*, No. 85-340-II, 1986 WL 7083 (Tenn. Ct. App. June 25, 1986).

As is the case with adoptions, proceedings to terminate parental rights are governed exclusively by statute in Tennessee. *In re Angela E*., 303 S.W.3d 240, 250 (Tenn. 2010) (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004)).

Because they are so closely related, adoption, involuntary termination of parental rights, and voluntary surrender of such rights are linked by a single comprehensive legislative scheme, found at Tenn. Code Ann. § 36-1-101 *et seq*. Statutes which are part of a broad statutory scheme should be interpreted *in pari materia*, so as to make that scheme consistent in all its parts. *Wells v. Tennessee Bd. of Regents,* 231 S.W.3d 912, 917 (Tenn. 2007); *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994); *State v. Allman*, 68 S.W.2d 478, 479 (Tenn. 1934). "An unhappy litigant cannot isolate one section in a statutory scheme and apply it to circumstances neither provided for nor intended by the balance of a given statutory framework. The entire chapter of statutes must be read *in pari materia*." *Bodin Apparel, Inc. v. Lowe*, 614 S.W.2d 571, 573 (Tenn. Ct. App. 1980).

Courts are required to construe a statute, or set of statutes, "so that the component parts are consistent and reasonable." *In re Sidney J*., 313 S.W.3d 772, 775 (Tenn. 2010) (quoting *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996)). We also have a duty to interpret a statute in a manner that makes no part inoperative. *In re Sidney J*., 313 S.W.3d at 775-76 (citing *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)).

In this case, the trial court granted Father's motion to dismiss, holding, *inter alia*, that the applicable statutory provisions, when read together, require that the parental rights of both parents must be terminated before anyone except a stepparent can adopt a child. Because Mother's rights had not been surrendered and were not the subject of the termination

---

[2]Tenn. Code Ann. § 36-1-101 sets out the purpose of the adoption statutes. It gives primacy to the best interest of the child in adoption proceedings, and specifically declares that "[i]n all cases when the best interest of the child and those of the adult are in conflict, such conflict shall always be resolved to favor the rights and the best interest of the child, which interests are hereby recognized as constitutionally protected and, to that end, this part shall be liberally construed." Tenn. Code Ann. § 36-1-101(c).

proceeding, J.E.N. could not adopt Shelby. Consequently, the trial court could not provide J.E.N. with the relief he requested.

It is important to note that Mother initially joined in the petition to terminate Father's rights and for J.E.N. to adopt Shelby. It was the intent of both that only Father's rights be terminated and that J.E.N. replace Father as Shelby's legal father, leaving Mother's parental rights unaffected. However, Mother later non-suited her claim against Father. Because the statute governing parties who can petition for termination of parental rights, Tennessee Code Annotated § 36-1-113(b), does not include a biological parent as a potential petitioner, Mother had no standing to pursue termination of Father's parental rights. *Osborn v. Marr*, 127 S.W.3d 739-40 (holding that a court may not terminate a parent's rights absent specific statutory authority and, since the mother lacked statutory standing, the court lacked subject matter jurisdiction to hear her petition).[3] Therefore, Mother's petition to terminate Father's parental rights would have been dismissed by the trial court even if she had not voluntarily dismissed it.

That leaves the question of whether J.E.N., who is not related to Shelby and is not her stepparent, is eligible to adopt her without first seeking the termination of Mother's parental rights. When we consider the statutory scheme for adoption and termination as a whole, we agree with the trial court that the kind of third-party adoption that J.E.N. and Mother sought is not authorized by statute. Consequently, the trial court had no jurisdiction to grant the petition, and it correctly dismissed J.E.N.'s petition because the petition failed to state a claim for relief that could be granted.

## IV. PREREQUISITE FOR ADOPTION

It is axiomatic that an adoption cannot occur as long as the parental rights of the legal or biological parent(s) still exist and are in effect. Both statutory and case law make it clear that there can be no legal adoption without a valid surrender or termination of parental

---

[3]Specifically, the Supreme Court stated:

[W]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite. Because the legislature specifically designated who may file a petition to terminate parental rights, a court does not have subject matter jurisdiction to hear such a petition unless the party filing the petition has standing. Standing, therefore, is a necessary prerequisite to the court's exercise of subject matter jurisdiction in termination of parental rights cases.

*Osborn*, 127 S.W.3d at 740.

rights. *See, e.g.*, Tenn. Code Ann. § 36-1-102(1)(A) (defining abandonment "for purposes of terminating the parental . . . rights of parent(s) . . . of a child in order to make that child available for adoption"); Tenn. Code Ann. § 36-1-113(d)(3)(A)(iii) (requiring that a petition describe whether parental rights have been terminated or surrendered and whether "any other such rights must be terminated before the child can be made available for adoption"); Tenn. Code Ann. § 36-1-116(b)(11) (requiring that an adoption petition contain a statement that there has been full compliance with the law regarding surrender or termination of rights or a statement of intent to effect compliance with requirements for surrender or termination "as part of the adoption proceeding"); Tenn. Code Ann. § 36-1-120(a)(6)(D) (requiring that the order of adoption include a statement that termination of all necessary parental rights by court order or surrender of those rights has occurred).

"There can be no valid adoption without a valid termination of parental rights." *In re Riggs*, 612 S.W.3d 461, 469 (Tenn. Ct. App. 1980). "[B]efore an adoption can occur the parents must either consent or have been determined to have abandoned the child." *Johnson v. Hall*, 678 S.W.2d 65, 68 (Tenn. Ct. App. 1984); s*ee In re A.B., J.B., C.H., and B.H.*, 198 S.W.3d 757, 767 (Tenn. Ct. App. 2006) (explaining that terminating mother's rights would allow children's integration into a stable and permanent environment through adoption); *O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995) (explaining that parents whose rights are terminated become legal strangers to the child while the adoptive parents acquire "all the parental rights and responsibilities"); *Ross v. Estrada*, 1990 WL 156284, at *9 (Tenn. Ct. App. Oct. 19, 1990) (holding that a court must terminate a parent's relationship with a child if permanency and stability can be achieved through adoption); *In re adoption of Lay*, 1988 WL 130345, at *2 (Tenn. Ct. App. Dec. 7, 1988) (stating that termination of parental rights is a crucial element of an adoption proceeding).

J.E.N. asserts, however, that termination of the rights of both biological parents is not necessary for an adoption to occur. We have held otherwise. In *In Re Z.J.S. and M.J.P.,* M2002-02235-COA-R3-JV, 2003 WL 21266854 (Tenn. Ct. App. June 3, 2003) (no Tenn. R. App. P. 11 application filed) we held:

> Tenn. Code Ann. § 36-1-117(a)(1) (2001) requires that **both** biological parents be made parties to a termination proceeding unless they have already formally surrendered their parental rights. An adoption proceeding cannot proceed until **both** the biological mother's and the biological father's parental rights have been adjudicated. *Nale v. Robertson*, 871 S.W.2d 674, 680 (Tenn. 1994).

2003 WL 21266854, at *5 (emphasis added).

This court examined an adoption arrangement similar to the one proposed by J.E.N. in *In the Matter of Shanda Lynnae Temple*, 1986 WL 8092 (Tenn. Ct. App. July 22, 1986). In that case, the trial court refused to terminate the rights of the child's biological father, even though he was not capable of providing the child custodial care due to a mental disability, but terminated the rights of the biological mother by default. The child's foster parents sought to adopt her, and the trial court found that the foster mother should be allowed to adopt the child, but not the foster father. The court's intent was to provide stability to the child without cutting off future financial support from the biological father. This court reversed the trial court, stating, "We find nothing in the statutes which would allow for the arrangement ordered by the trial court." 1986 WL 8092, at *2. Although this court's reasoning was based on a statute requiring both spouses to join in an adoption, its conclusion that the arrangement was not authorized by statute is directly applicable to the issue before us, especially since that proposed arrangement was essentially the same as the one J.E.N. seeks. Without specific authorization from and compliance with the relevant statutes, an adoption cannot take place.

A comprehensive reading of the statutes governing termination of parental rights and adoption leaves no doubt that an adoption is not authorized absent a stepparent situation as discussed below, unless the rights of both parents are terminated or voluntarily relinquished.[4] Stated another way, in the case before us, J.E.N. cannot adopt Shelby unless Mother's parental rights are terminated or surrendered.

Tennessee law is clear that a parent may not consent to an unrelated party's adopting his or her child without thereby relinquishing his or her own parental rights. Tennessee Code Annotated § 36-1-117(g)(1) sets out the consequences for a parent who consents to an adoption by an unrelated individual:

> A parent may sign a petition for adoption as provided by § 36-1-102 for the purpose of giving parental consent to the adoption of the parent's child by unrelated persons. The petition must state that the parent understands that the entry of an order confirming the parental consent, without revoking the parental consent prior to the entry of such order, **will terminate that parent's parental rights to the child forever and that the parent will have no legal rights to the custody, control, or to visitation with the child in the future.**

Tenn. Code Ann. § 36-1-117(g)(1) (emphasis added).

---

[4]Tenn. Code Ann. § 36-1-111 permits a legal or biological parent to surrender a child to an adoptive parent of his or her own choosing, subject to the court's approval. *See In re Adoption of M.J.S.*, 44 S.W.3d at 50.

This provision makes clear that by joining in a petition for the purpose of consenting to an adoption by an unrelated person, the legal or biological parent is also consenting to the automatic termination of his or her parental rights. Originally, Mother joined in J.E.N.'s petition. However, she later withdrew from participation in the petition, indicating she did not intend to surrender her parental rights to J.E.N. Absent Mother's voluntary surrender, J.E.N. was required by statute to make Mother a party to the proceeding and seek involuntary termination of her parental rights if he wanted to adopt Shelby.

> Unless the legal parent or the guardian, or, as provided in subsections (b) and (c), the putative biological father of the child has surrendered parental or guardianship rights to the child, has executed a parental consent that has been confirmed by the court, has waived the person's rights pursuant to § 36-1-111(w), or unless the person's rights have been terminated by the order of a court of competent jurisdiction, the legal parents, guardian of the person of the child or of an adult, **the biological mother, and the established father** or putative father of the child must be made parties to the adoption proceeding or to a separate proceeding seeking the termination of those rights, and **their rights to the child must be terminated by a court to authorize the court to order the adoption of the child or adult by other persons**.

Tenn. Code Ann. § 36-1-117(a) (emphasis added).

Because Mother did not surrender her parental rights, the above statutory provision required that she be joined as a party to J.E.N.'s petition for termination and adoption and that her parental rights be terminated before the court could order the adoption of Shelby by J.E.N.[5] In the absence of Mother's participation, the petition was fatally deficient. Further, the quoted statutory provision requires that both the biological mother <u>and</u> the father be made parties to the adoption suit for purpose of terminating their rights, if they have not voluntarily surrendered them.

In one situation only, involving a stepparent, can a biological parent sign a co-petition in an adoption proceeding without automatically surrendering his or her parental rights. This stepparent exception is carved out by statute in Tenn. Code Ann. § 36-1-117(f), which reads in its entirety:

> When the child is related to one (1) of the petitioners or is the stepchild of the

---

[5]J.E.N. relies on *In the Matter of M.L.P.*, 281 S.W.3d 387 (Tenn. 2009), as support for his argument that since Mother's rights were not at stake in the petition herein, it was not necessary to join her as a party. We find the cases so dissimilar that *M.L.P.* is simply inapplicable to the issues herein. As set out herein, statute requires that Mother be joined or willingly relinquish her rights.

petitioner, and the legal or biological parent(s) or guardian(s) of the child signs the adoption petition as a co-petitioner for the specific purpose, as stated in the petition, of giving consent to the adoption, no further surrender, parental consent, or termination of parental rights shall be required as to that parent or guardian, **as the act of joining in the adoption petition shall be deemed a complete surrender**, notwithstanding the provisions of subsection (g), and no further notice or service of process need be made to that person; provided, that **where the stepparent of a stepchild seeks to adopt a stepchild, the co-signing of the petition by the child's parent who is the spouse of the petitioner shall not affect the existing parent/child legal relationship between that parent and the parent's child who is the subject of the adoption petition by the stepparent of the child.**

Tenn. Code Ann. § 36-1-117(f) (emphasis added). Since Petitioner is not married to Mother, he is not Shelby's stepfather, and therefore cannot avail himself of this exception.

Tennessee Code Annotated § 36-1-115 sets out the necessary ingredients for a valid adoption petition. Part of that statute specifically addresses the stepparent exception discussed above, and makes clear that in that situation, a parent consenting to adoption by his or her spouse retains parental rights.

If the petitioner has a spouse living, competent to join in the petition, such spouse shall join in the petition; provided, that if the spouse of the petitioner is a legal or biological parent of the child to be adopted, such spouse shall sign the petition as co-petitioner, and this shall be **sufficient consent by the legal or biological parent for the petitioner's spouse to adopt the child of the legal or biological parent,** and no surrender shall be necessary by such co-petitioning legal or biological parent. Such action by the legal or biological parent **shall not otherwise affect the legal relationship between that parent and the child.**

Tenn. Code Ann. § 36-1-115(c) (emphasis added).

In the absence of the stepparent relationship, however, a parent consenting to adoption of his or her child gives up parental rights to the child, as set out in Tenn. Code Ann. § 36-1-117(g)(1), quoted above.

We conclude that, under the governing statutes, J.E.N. does not have the legal capacity or ability to adopt Shelby so long as Mother is unwilling to relinquish her own parental rights

or unless those rights are terminated by court order.[6]  Consequently, we agree with the trial court that the court cannot provide the relief requested by J.E.N. in his adoption petition.

## V.  TERMINATION OF FATHER'S RIGHTS

J.E.N. insists that even if he is ineligible to adopt, he is still entitled to petition the court to terminate Father's parental rights.  He argues that he is a "potential adoptive parent" and, as such, is entitled to bring a petition to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(b), which reads:

> The prospective adoptive parent or parents, including extended family members caring for a related child, any licensed child-placing agency having custody of the child, the child's guardian ad litem, or the department shall have standing to file a petition pursuant to this part or title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of the child.  The prospective adoptive parents, including extended family members caring for a related child, shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.

J.E.N. insists that we must consider him to be a "prospective adoptive parent" in accordance with Tenn. Code Ann. § 36-1-102(41), which defines that term as follows:

> "Prospective adoptive parents" means a non-agency person or persons who are seeking to adopt a child and who have made application with a licensed child-placing agency or licensed clinical social worker or the department for approval, or who have been previously approved, to receive a child for adoption, or who have received or who expect to receive a surrender of a child, or who have filed a petition for termination or for adoption.

Obviously, J.E.N. meets none of these criteria except the last.  We cannot agree, however, that his filing a petition for adoption that cannot lawfully be granted makes him a prospective adoptive parent.  Neither can we read the statute as stating that anyone who files

---

[6]J.E.N. notes that expansive language in some statutory provisions sets out broad categories of parties who are entitled to file petitions for adoption.  For example, Tenn. Code Ann. § 36-1-115(a) states that "[a]ny person over eighteen years of age may petition the chancery or circuit court to adopt a person and may request that the adopted person's name be changed."  Also, Tenn. Code Ann. § 36-1-107(b) specifically states that "A single person may file a petition for adoption of a child."  Nonetheless, as set out above, J.E.N. cannot adopt Shelby under the situation represented in his petition.

a petition to terminate parental rights automatically becomes eligible, or legally entitled, to seek such a termination. That reading would render the requirements in Tenn. Code Ann. § 36-1-113(b) meaningless. We cannot adopt such an interpretation.

We interpret the legislative scheme for termination and adoption, taken as a whole, as contemplating that a "prospective adoptive parent" is one who not only harbors the intention or desire to adopt, but who also has the legal capacity or ability to do so.[7] Thus, when the face of a petition for termination of parental rights and adoption reveals that the petitioner does not have such legal capacity to adopt, it is appropriate to dismiss that petition.[8]

Finally, if J.E.N. cannot adopt Shelby and thereby take over parental responsibilities or obligations to her, there appears to be no precedent for an unrelated individual to seek to terminate a parent's rights and thereby deprive the child of another adult who has responsibilities to her. "When parental rights are terminated, all legal rights and obligations of the parent are severed, including the duty to provide support. *See* Tenn. Code Ann. § 36-1-113(*l*)(1) (2001). The termination of a parent's parental rights outside the context of a prospective adoption would deny the child the support of two parents." *Osborn v. Marr*, 127 S.W.3d at 740.

If we were to hold that J.E.N. has standing to bring an action to terminate Father's rights, and if those rights were to be terminated in accordance with J.E.N.'s petition, then the child would lose any right of future support from Father. Yet the termination of Father's parental rights would not expand the child's base of support, because the operation of Tenn. Code Ann. § 36-1-117(a)(1) and (f) would prevent J.E.N. from adopting the child. Thus, Shelby can continue to depend on J.E.N.'s generosity, but J.E.N. cannot be charged with any enforceable duty of support.

---

[7] We note that statute requires that an adoption petition contain a statement that there has been full compliance with the law regarding surrender or termination of rights or a statement of intent to effect compliance with requirements for surrender or termination. Tenn. Code Ann. § 36-1-116(b)(11). The petition in the record in this case does not indicate that J.E.N. intends to seek termination of Mother's rights.

[8] Since the relief sought by J.E.N. cannot be granted under our interpretation of the law, the Tenn. R. Civ. P. 12.02(6) motion was correctly granted, whether stated in those terms or as a standing issue.

-13-

## VI.

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Williamson County for further proceedings. Tax the costs on appeal to the appellant, J.E.N.

_____
PATRICIA J. COTTRELL, JUDGE